**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

| | |
|---|---|
| **CHRISTINA MCCUNE and ADDESHA BRADY,** individually, and on behalf of others similarly situated, | Case No. 23-cv-00041 |
| Plaintiffs, | Hon. Jamar K. Walker |
| vs. | Hon. Magistrate Douglas E. Miller |
| **FANEUIL INC.**, a Virginia Corporation, | |
| Defendant. | |

---

**PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR SETTLEMENT APPROVAL**

# TABLE OF AUTHORITIES

*A.H. Phillips, Inc. v. Walling,*
 324 U.S. 490 (1945)................................................................................................ 32

*Amaya v. DGS Constr., LLC,*
 2023 WL 8188628 (D. Md. Nov. 27, 2023) ........................................................ 27

*Archbold v. Wells Fargo Bank, N.A.,*
 No. 3:13-CV-24599; 2015 WL 4276295 (S.D.W. Va. July 14, 2015) ............... 30

*Arvinger v. Mayor and City Council of Baltimore,*
 31 F.3d 196 (4th Cir. 1994) ................................................................................. 26

*Barber v. Kimbrell's, Inc.,*
 577 F.2d 216 (4th Cir. 1978) .........................................................................32, 33

*Baust v. City of Virginia Beach,*
 574 F. Supp. 3d 358 (E.D. Va. 2021) .............................................................17, 36

*Braun v. Culp, Inc.,*
 1985 WL 5857 (M.D.N.C. Apr. 26, 1985) ......................................................... 27

*Brinkman v. Pete & Sons, Inc.,*
 No. 8:22-CV-01460-AAQ; 2023 WL 3794180 (D. Md. June 1, 2023)................. 19

*Bunn v. Bowen,*
 637 F. Supp. 464 (E.D.N.C. 1986)...................................................................... 38

*Cleveland Cnty. v. Conner,*
 143 S. Ct. 523; 214 L. Ed. 2d 300 (2022) .......................................................... 11

*Compton v. N. Cent. Virginia Restaurants, Inc.,*
 No. 5:20-CV-00073; 2022 WL 4008719 (W.D. Va. Sept. 2, 2022).................... 40

*Conner v. Cleveland Cnty., N. Carolina,*
 22 F.4th 412 (4th Cir.) ........................................................................................ 11

*Curtis v. Genesis Eng'g Sols., Inc.,*
 2022 WL 1062024 (D. Md. Apr. 8, 2022) .......................................................... 40

*Davis v. Kayree, Inc.,*
 No. 4:19CV55, 2020 WL 1479035 (E.D. Va. Mar. 24, 2020) ............................ 19

*Davis v. Terminix Co., Inc.,*
 No. 2:09CV309, 2011 WL 13234297 (E.D. Va. Oct. 11, 2011) ........................ 18

*Decohen v. Abbasi, LLC,*
 299 F.R.D. 469 (D.Md. 2014).............................................................................. 30

*Dennis v. Sandhills Emergency Physicians, P.A.,*
 2022 WL 4484338 (M.D.N.C. Sept. 27, 2022).................................................... 34

*DeWitt v. Darlington Cnty., S.C.,*
 No. 4:11-CV-00740-RBH .................................................................................17, 35

*Dickey v. R.R. Donnelley & Sons Co.,*
 No. 1:18CV920, 2021 WL 1169245 (M.D.N.C. Mar. 26, 2021) ....................... 24

*Doe v. Chao,*
 435 F.3d 492 (4th Cir. 2006) ............................................................................... 33

*Duckworth v. Whisenant,*
 97 F.3d 1393 (11th Cir. 1996) ............................................................................ 38

*Duprey v. Scotts Co. LLC,*
 30 F. Supp. 3d 404 (D. Md. 2014) ..................................................................19, 20

*Farrar v. Hobby*,
   506 U.S. 103 (1992)..................................................................................26

*Ford v. Cardinal Innovations Healthcare Sols.*,
   No. 1:20-CV-736; 2022 WL 558376 (M.D.N.C. Jan. 21, 2022).........................31

*Fry v. Harrisonburg Sports Bar, Inc.*,
   2024 WL 729223 (E.D. Va. Feb. 22, 2024)..........................................................18

*Garcia v. Decalo Med. Grp., LLC*,
   No. 14-CV-00301; 2015 WL 9311984 (D. Md. Dec. 23, 2015) .........................31

*Gholston v. Smithfield Foods, Inc.*,
   No. 2:21-CV-194; 2022 WL 21842305 (E.D. Va. Nov. 2, 2022) ........................36

*Gilbert LLP v. Tire Eng'g & Distribution, LLC*,
   689 F. App'x 197 (4th Cir. 2017)..........................................................................34

*Goldenberg v. Marriott PLP Corp.*,
   33 F.Supp.2d 434 (D.Md.1998) ............................................................24, 29, 39

*Gomez v. Seoul Gool Dae Gee Inc.*,
   434 F. Supp. 3d 381 (E.D. Va. 2020) ..............................................................26, 37

*Goodman v. Phillip R. Curtis Enters., Inc.*,
   809 F.2d 228 (4th Cir. 1987) ................................................................................34

*Graham v. Famous Dave's of Am., Inc.*,
   2022 WL 17584274 (D. Md. Dec. 12, 2022)........................................................25

*Hackett v. ADF Rest. Investments*,
   259 F. Supp. 3d 360 (D. Md. 2016) ......................................................................30

*Hatzey v. Divurgent, LLC*,
   No. 2:18-CV-191; 2018 WL 5624300 (E.D. Va. Oct. 9, 2018)...........................18

*Hatzey v. Divurgent, LLC.*,
   No. 2:18CV191, 2018 WL 5621967 (E.D. Va. Oct. 30, 2018) ...........................18

*Helmick v. Columbia Gas Transmission*,
   No. CIV.A., 2:07-CV-00743; 2010 WL 2671506 (S.D.W. Va. July 1, 2010) ....30

*Hilderbrand v. Pelham Transporation Corp.*,
   No. 1:20-CV-1020; 2022 WL 19974169 (M.D.N.C. Mar. 22, 2022)...................31

*Hoffman v. First Student, Inc.*,
   2010 WL 1176641 (D. Md. Mar. 23, 2010)..........................................................30

*Hollis v. Valley Proteins Inc., - 00112-FDW-DSC*,
   2022 WL 703606 (2022).......................................................................................29

*Horton v. Love's Travel Stops & Country Stores, Inc.*,
   No. 1:19CV1193, 2022 WL 2527824 (M.D.N.C. July 7, 2022) .........................18

*Hyatt v. Heckler*,
   586 F. Supp. 1154 (W.D.N.C. 1984) ....................................................................37

*In re Abrams & Abrams, P.A.*,
   605 F.3d 238 (4th Cir. 2010) ................................................................................34

*In re First Fidelity Bancorporation Sec. Litig.*,
   750 F. Supp. 160 (D.N.J. 1990) ...........................................................................29

*In re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031 Tax Deferred Exch. Litig.*,
   No. 3:09-CV-00054; 2012 WL 5430841 (D.S.C. Nov. 7, 2012).....................24, 27

*In re Red Hat, Inc. Sec. Litig.*,
   No. 5:04-CV-473-BR; 2010 WL 11668099 (E.D.N.C. Dec. 10, 2010) ..............30

*In re Steel Network, Inc.*,
  2011 WL 4002206 (Bankr. M.D.N.C. June 27, 2011)..................................................37

*In re Wachovia Corp. ERISA Litig.*,
  No. 3:09CV262, 2011 WL 5037183 (W.D.N.C. Oct. 24, 2011) .............................32

*Irvine v. Destination Wild Dunes Mgmt., Inc.*,
  204 F. Supp. 3d 846 (D.S.C. 2016)......................................................................20

*Jackson v. Estelle's Place, LLC*,
  391 F. App'x 239 (4th Cir. 2010)..........................................................................32

*Johnson v. Big Lots Stores, Inc.*,
  639 F. Supp. 2d 696 (E.D. La. 2009)...................................................................39

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (1974)..............................................................................................32

*Jones v. Dominion Res. Servs., Inc.*,
  601 F. Supp. 2d 756 (S.D.W. Va. 2009) ........................................... 25, 32, 38

*Kay Co. v. Equitable Production Co.*,
  749 F. Supp. 2d 455 (S.D.W. Va. 2010) .............................................25, 39

*Kelly v. Johns Hopkins Univ.*,
  No. 1:16-CV-2835-GLR; 2020 WL 434473 (D. Md. Jan. 28, 2020) .................29

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.*,
  352 F. Supp. 3d 499 (M.D.N.C. 2018) ...................................... 24, 34, 40

*LaFleur v. Dollar Tree Stores, Inc.*,
  189 F. Supp. 3d 588 (E.D. Va. 2016) ...................................................................17

*Lewis v. J.P. Stevens & Co.*,
  849 F.2d 605 (4th Cir. 1988) .....................................................................34, 36

*Lewis v. Precision Concepts Grp. LLC*,
  No. 1:18CV64, 2021 WL 7185505 (M.D.N.C. Mar. 23, 2021) .............................40

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
  2009 WL 3094955 (E.D. Va. Sept. 28, 2009)...........................................17, 20

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
  711 F.3d 106 (2d Cir. 2013)..................................................................................11

*McClaran v. Carolina Ale House Operating Co., LLC*,
  No. 3:14-CV-03884-MBS ................................................................................28, 33

*McDaniels v. Westlake Servs., LLC*,
  2014 WL 556288 (D. Md. Feb. 7, 2014) ...............................................................30

*Monzon v. Gali Serv. Indus., Inc.*,
  2015 WL 1650167 (D. Md. Apr. 13, 2015) ...........................................................21

*Nieman v. Duke Energy Corp.*,
  2015 U.S. Dist. LEXIS 148260 (W.D.N.C. Nov. 2, 2015).................................38

*Norman v. Housing Authority of City of Montgomery*,
  836 F.2d 1292 (11th Cir. 1988) .............................................................................38

*Patel v. Barot*,
  15 F. Supp. 3d 648 (E.D. Va. 2014) .....................................................................18

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
  483 U.S. 711 (1987)..............................................................................................36

*Phillips v. Triad Guar., Inc.*,
  2016 WL 2636289 (M.D.N.C. May 9, 2016) ................................... 24, 30, 32

*Price v. City of Fayetteville, N.C.*,
   No. 5:13-CV-150-FL; 2015 WL 1222168 (E.D.N.C. Mar. 17, 2015) .................................. 37
*Randle v. H&P Capital, Inc.*,
   513 F. App'x 282 (4th Cir. 2013) ................................................................................... 25
*Riddle v. City of Anderson, S.C.*,
   No. 8:12-CV-03480-TMC; 2015 WL 12830369 (D.S.C. Jan. 26, 2015) ........................... 17
*Rineholt v. HFS Financial LLC, et al.*,
   2024 WL 1243844 (D. Md. Mar. 21, 2024) ...................................................................... 18
*Rosales v. Rock Spring Contracting LLC, et al., No. 3:23CV407 (RCY)*,
   2024 WL 1417955 (E.D. Va. Apr. 2, 2024) ................................................................17, 18
*Salinas v. Commercial Interiors, Inc.*,
   848 F.3d 125 (4th Cir. 2017) ......................................................................................... 32
*Singleton v. Domino's Pizza, LLC*,
   976 F. Supp. 2d 665 (D. Md. 2013) ..........................................................................38, 39
*Smith v. Krispy Kreme Doughnut Corp.*,
   No. 1:05CV00187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) ....................................... 28
*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
   890 F. Supp. 499 (E.D. Va. 1995) ................................................................................. 25
*Tenn. C. v. Muscoda*,
   321 U.S. 590 (1944) ...................................................................................................... 32
*Thomas v. FTS USA, LLC*,
   No. 3:13-CV-825; 2017 WL 1148283 (E.D. Va. Jan. 9, 2017) ......................................... 30
*Tom v. Hospitality Ventures, LLC*,
   No. 5:17-CV-98-FL ........................................................................................................ 29
*Va. Acad. of Clinical Psychologists v. Blue Shield of Va.*,
   543 F. Supp. 126 (E.D. Va. 1982) ................................................................................. 37
*Velasquez-Monterrosa v. Mi Casita Rests.*,
   No. 5:14-CV-448-BO ...................................................................................................... 29
*Wai Man Tom V. Hosp. Ventures LLC*,
   980 F.3d 1027 (4th Cir. 2020) ....................................................................................... 35
*Webb v. Daymark Recovery Servs., Inc.*,
   No. 1:21CV424, 2023 WL 9233967 (M.D.N.C. May 26, 2023) ......................................... 31
*Wegner v. Carahsoft Tech. Corp.*,
   2022 WL 316653 (D. Md. Feb. 1, 2022) .......................................................................... 20
*Winingear v. City of Norfolk*,
   No. 2:12cv560, 2014 WL 3500996 (E.D. Va. July 14, 2014) .......................................21, 28

**FEDERAL STATUTES**

Title 29 U.S.C. Section 216(b) ............................................................................................. 7

Title 29 U.S.C. § 216(b) ....................................................................................................... 8

Title 29 U.S.C. § 254 .......................................................................................................... 13

**FEDERAL REGULATIONS**

Title 29 C.F.R. § 785.12 ................................................................................................... 23

**OTHER AUTHORITIES**

https://finance.yahoo.com/news/call-center-attrition-rate-now-121800604.html ........................ 37

https://www.dmavalue.com/team/eric-lietzow ................................................................. 9

https://www.cliffordemploymentlaw.com/mediation/ ..................................................... 9

## I.    INTRODUCTION

This is a wage-and-hour collective/class action that arises from claims of alleged unpaid wages in a remote call center setting. The Named Plaintiffs, Christina McCune and Addesha Brady (hereinafter "Named Plaintiffs") and approximately 2,628 other individuals worked as remote hourly customer service representatives ("CSRs") for Faneuil Inc. ("Defendant") on the Humana, LA Care or Massachusetts Health connector programs between June 5, 2020 and November 10, 2023 who had not previously released their claims (hereinafter, "Settlement Collective").

In their First Amended Complaint ("FAC"), the Named Plaintiffs allege that Defendant failed to compensate CSRs for the time spent logging into and out of the computer systems required for their work each day.[1] However, to date, this remains a highly contested case. Defendant denies Plaintiffs' allegations in their entirety and in answering the FAC asserted twenty-six (26) affirmative defenses. [D.E. 17.]  To the extent there was any unpaid compensable computer bootup/shutdown time, Defendant is adamant that Plaintiffs' estimations of the amount of unpaid time are wildly exaggerated. Furthermore, Defendant claims that to the extent any off-the-clock bootup/shutdown time did occur, the amount of unpaid time was *de minimis*, and not compensable.

Despite the diametrically opposed views of Plaintiffs' claims, the Parties agreed to engage in substantial informal discovery and to submit the case to mediation. To conduct the mediation, the Parties hired a nationally recognized wage and hour mediator, Dennis Clifford. After a full day of arguments and negotiations, the first mediation ultimately ended in an impasse. However, the Parties agreed to exchange additional information, further investigate Plaintiffs' claims, and return to mediation several weeks later. At the conclusion of a second full day of mediation, the Parties

---

[1] Plaintiffs further alleged that Defendant failed to incorporate non-discretionary bonus/incentive pay into the CSRs' overtime rate calculations, which occasionally resulted in deficient (and unlawful) overtime payments. [D.E. 16] However, the deficient overtime rate claim is extremely limited, as Defendant corrected the issue in April 2021.

reached a Memorandum of Understanding on many of the material terms of a settlement. In the two months that followed, the Parties continued to zealously advocate their clients' interests in the negotiation of the terms of the long-form Joint Stipulation of Collective Action Settlement and Release ("Settlement Agreement"). *See Exhibit 1*, the Settlement Agreement. As the record reflects, the Parties required several extensions to finalize all the terms of the Settlement Agreement, and even had to return to the mediator for a *third* time to resolve a final dispute regarding the terms and reach an agreement in full on the Settlement Agreement.

For all the reasons discussed herein, Plaintiffs respectfully submit that the Parties' proposed Settlement Agreement is fair and reasonable in all regards and should be approved in its entirety.[2]

## II.    PROCEDURAL HISTORY OF THE CASE

Plaintiffs filed this case just over a year ago, on March 30, 2023. [D.E. 1.] Shortly after Plaintiffs' Complaint was served, Defense Counsel contacted Plaintiffs' Counsel to inquire whether they would oppose a request for a short extension on Defendant's deadline to file a responsive pleading. Plaintiffs indicated they had no objection, but immediately raised the issue of Plaintiffs' forthcoming pre-discovery motion for conditional certification. Defense Counsel indicated they would discuss Defendant's opposition or non-opposition and promptly notify

---

[2] Though Defendant would, in the course of litigation, vigorously oppose the merits of the Plaintiffs' individual, class, and collective claims and oppose the ultimate certification of a collective under Section 216(b) of the FLSA (and seek decertification of the same) or any Rule 23 class, they do not oppose the instant motion for approval of the proposed settlement or the certification of the proposed Settlement Collective for settlement purposes only.  To the extent that the Court does not grant approval of the proposed Settlement, Defendant reserves the right to raise any argument with respect to the merits of the Plaintiffs' individual, class, or collective claims or the appropriateness of the certification (or decertification) of any FLSA collective or Rule 23 class that they might have otherwise undertaken in litigation, or to make arguments that are contrary to the positions taken by the Plaintiffs in this memorandum.  In addition, regardless of whether this Court approves the proposed Settlement, Defendant's non-opposition to this motion for approval shall not act to preclude Defendant from opposing both the merits, and the propriety of collective or class certification, in any subsequent action.

Plaintiffs' Counsel of the same. On May 18, 2023, Defendant filed its Consent Motion to Extend Deadline to File Responsive Pleading. [D.E. 11.] *See also*, *Exhibit 2*, Ash Decl. at ¶11.

Over the next several weeks, the Parties continued to meet-and-confer regarding various aspects of the case, including conditional certification and the scope of the potential collective. On June 22, 2023, the Parties notified the Court that they had reached an agreement on conditional certification of a FLSA collective. Under the Agreement, Plaintiffs would amend the Complaint to narrow the scope of the collective to include only the projects the Named Plaintiffs worked on for Defendant.[3] [D.E. 14.] *See also*, Ash Decl. at ¶12.

On June 29, 2023, Plaintiffs filed their FAC consistent with the Parties' agreement. [D.E. 16.] Approximately two weeks later, on July 13, 2023, Defendant filed its Answer and Affirmative Defenses to Plaintiffs' FAC. [D.E. 17.] The same day, the Parties submitted their Stipulation to Conditionally Certify Collective Action, Pursuant to 29 U.S.C. §216(b). [D.E. 18.]

On September 6, 2023, the Court conducted the Rule 26(f) conference. At the conference, the Parties explained to the Court that they were both willing to explore resolution through private mediation, but only after an informal discovery process that would allow them to properly evaluate the claims and defenses of the case. The following day, the Parties submitted a Joint Motion for Temporary Stay of Litigation to Attend Private Mediation. [D.E. 26.] On September 8, 2023, the Court granted the Motion to Stay, and the Parties turned their attention to exchanging the information needed to properly evaluate the claims and defenses at issue. [D.E. 27.]

Over the next three months, the Parties engaged in informal discovery. However, on December 4, 2023, the Parties filed a Joint Motion to Extend Stay of Case because Defendant

---

[3] Plaintiffs also agreed to remove the allegations related to the Kronos timekeeping system outage upon confirmation from Defendant that it was not using the web-based version of the platform that was affected by the outage.

required additional time to complete its data and document production for mediation. As a result, the Parties adjourned the mediation until January 16, 2023. [D.E. 28.]

The week prior to the mediation, both Parties prepared and submitted detailed mediation statements, which they exchanged with one another to ensure transparency regarding their respective positions. The mediation statements were based on the voluminous documents and data produced during the Parties' informal discovery. To assist in the mediation preparation and, specifically, the creation of an accurate damage model, Plaintiffs' Counsel enlisted the services of forensic accountant and damages expert, Eric Lietzow of Desmond, Marcello & Amster.[4] With Mr. Lietzow's assistance, Collective Counsel prepared a detailed damage model based on the payroll records produced by Defendant, which took into account the number of minutes of alleged off-the-clock work and the corresponding amount of damages. *Exhibit 2*, Ash Decl. at ¶21.

On January 16, 2023, the Parties attended the first of two mediations with nationally respected wage and hour mediator Dennis Clifford, who is based out of Houston, Texas.[5] After the first full-day of arguments and arms-length negotiations, no settlement was reached. However, the Parties agreed to exchange additional information relative to some of the arguments raised at mediation. On February 2, 2024, the Parties returned to a second mediation. *Id.*, ¶¶27-29.

At the second mediation, the Parties were able to agree on most of the material terms of a collective common fund settlement agreement. Counsel for the Parties memorialized these material terms in a "Memorandum of Understanding." *Id.*

In the two months that followed, the Parties together drafted and negotiated the terms and form of the long-form Settlement Agreement that is presently before the Court for approval. *Exhibit 1*. In order to reach complete agreement on all the terms of the Settlement Agreement, the

---

[4] *See*, https://www.dmavalue.com/team/eric-lietzow (last visited 3/18/24).
[5] *See*, https://www.cliffordemploymentlaw.com/mediation/ (last visited 3/18/24).

Parties required multiple extensions from the Court. *See*, D.E. 30, 32, 34. In fact, the negotiations over the terms of the settlement agreement were so disputed that the Parties had to return to the mediator for a third time to finalize the Settlement Agreement. *Exhibit 2*, Ash Decl. at ¶ 30.

Finally, on April 5, 2024, the Parties reached a full agreement on the terms of their proposed Settlement Agreement, which is now before the Court for approval. While negotiating the final form of the Settlement Agreement, Plaintiffs' Counsel began preparing the present motion and obtaining quotes from claims administrators. After competitive shopping multiple quotes from qualified claims administrators, the Parties elected to hire ILYM, Inc. to carry out the duties set forth in Section IX of the Settlement Agreement. *Id*., at ¶¶32, 49-51.

### III.    STATEMENT OF FACTS RELEVANT TO THE MOTION

#### A.  The Parties

Plaintiffs and the members of the Settlement Collective are hourly, remote CSRs who worked for Defendant on its Humana, LA Care or Massachusetts Health Connector accounts at any time from June 5, 2020 through November 10, 2023 and did not previously participate in the settlement of a lawsuit that released the claims asserted in the Litigation. *Exhibit 1*, Settlement Agreement, Appendix A, ¶ DD. As alleged in the FAC, Defendant's CSRs perform typical call center job duties from their home offices across the country, which include taking in-bound calls from and making out-bound calls to individuals who require assistance in obtaining benefits through Defendant's corporate clients. D.E. 16, ¶ 47.

Defendant is a Virginia company that provides business process outsourcing services for companies (and local governments) across the country. *Id*., ¶ 2. These outsourcing services include, as illustrated by this case, providing clients with remote, hourly CSRs (like Plaintiffs).

#### B.  Allegations of Off-the-Clock Work

Regarding the amount of off-the-clock work alleged in the FAC, Plaintiffs alleged "no less than fourteen (14) minutes per day of work performed during pre- and post-shift time and during their lunch periods." *Id.*, ¶ 85. Defendant strongly disputes these allegations (*i.e.* that there was any off-the-clock work) and maintains even if there was some minimal off-the-clock work performed, Plaintiffs' estimations are grossly overstated. Furthermore, Defendant has produced its written policies expressly instructing CSRs not to perform this work off the clock.

### C.  Facts Regarding the Settlement Collective and Defendant's Potential Exposure

The Settlement Collective is comprised of approximately 2,628 CSRs. Ash Decl. at ¶22. With the assistance of their damage expert, Plaintiffs were able to identify the following key data points in the payroll and employment data produced by Defendant through informal discovery:

- An average hourly rate across all CSRs of $14.89;
- 61,182 total workweeks; and
- 261,246 total shifts.

Next, assuming nine (9) minutes of off-the-clock work, a three-year statute of limitations, and liquidated damages, Plaintiffs' model estimated that the total unpaid wages for both overtime and straight time damages amounts to $1,060,495.85, or approximately $1,000,000.00 (the settlement amount).[6] *Id*.

If Plaintiffs had recovered the full fourteen (14) minutes alleged in the FAC, assuming a three-year statute limitations and liquidated damages, the straight time[7] and overtime damages under Plaintiffs' damage model total $1,667,329.31. Ash Decl. at ¶22.

---

[6] At 9 minutes of off-the-clock work, Plaintiffs' damage model identified 40,105 non-overtime weeks and 21,077 overtime weeks.

[7] Pursuant to well-settled law, straight time wages or wages for non-overtime hours in weeks in which employees do not work overtime hours are not recoverable under the FLSA.  *See Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 116 (2d Cir. 2013); *but see Conner v. Cleveland Cnty., N. Carolina*, 22 F.4th 412 (4th Cir.), *cert. denied sub nom. Cleveland Cnty. v.*

**D. Defendant's Defenses**

In answering the FAC, Defendant asserted twenty-six affirmative defenses. [D.E. 17.] Among the defenses raised was that Defendant cannot be held liable for off-the-clock work that it did not know, or could not have reasonably known, was occurring. Recall, the CSRs worked from home and Defendant maintained written policies that instructed the CSRs to bootup their computers *after* clocking in. *See* Ash Decl. at ¶17, FN 2.

To that end, even if Defendant did face liability, the Plaintiffs would face a serious challenge establishing that Defendant willfully violated the FLSA. Absent a finding of willfulness, only a two-year statute of limitations would apply, not a three-year statute of limitations. This would not only result in a significant reduction in Defendant's exposure but would also result in many members of the Settlement Collective having no viable claim at all. Additionally, given Defendant's written policies, Defendant is adamant that liquidated damages will not be awarded due to Defendant's good faith belief that it was in compliance with the FLSA.

To put the numerical significance of the preceding paragraph into context, consider the following. Without liquidated damages and a three-year statute of limitation, Defendant's maximum overtime exposure at 14 minutes is cut from $1,129,997.48 to approximately $376,665.83.[8] Considering these facts, Plaintiffs' Counsel believes that the Settlement Agreement truly represents an extraordinary result for the Settlement Collective.

Furthermore, the issue of class and collective certification remains. The FAC asserts three

---

*Conner*, 143 S. Ct. 523, 214 L. Ed. 2d 300 (2022) (such hours recoverable in weeks in which employee works over 40 hours).

[8] Under Plaintiffs' damage model, at 14 minutes, a three-year statute of limitations, and liquidated damages, the Defendant's overtime exposure is $1,129,997.48. Remove liquidated damages and, by Plaintiffs' calculation, the amount falls to $564,998.74. Over three years, $564,998.74 split evenly is $188,332.91. Subtract $188,332.91 from $564,998.74 and, according to Plaintiffs, Defendant's maximum overtime exposure based on 14 minutes is only $376,665.83.

claims: Count 1, Violation of the FLSA; Count 2, nationwide breach of contract; and Count 3, unjust enrichment (in the alternative to Count 2). Suffice it to say, obtaining nationwide class certification, particularly for Counts 2 and 3, will be incredibly difficult in this case.

Other defenses raised by Defendant include that the off-the-clock work is *de minimis* or barred by Section 4 of the Portal-to-Portal Act, 29 U.S.C. § 254. While Plaintiffs take issue with all of these defenses, they nonetheless weighed on the Plaintiffs' decision to settle the case.

## IV.    THE KEY TERMS OF THE SETTLEMENT AGREEMENT

### A.  The Common Fund and Calculation of Individual Settlement Amounts

The Parties' proposed settlement provides for a Common Fund/Maximum Gross Settlement Amount ("Common Fund") of $1,000,000.00.[9] *See*, *Exhibit 1*, Appendix A, ¶ Q. The Common Fund is used to pay the Settlement Payments, Collective Counsel's Fees, Costs, and Expenses, the Settlement Expenses, the Service Payments, Plaintiff's share of the Mediation Expenses, the Settlement Collective's payroll and back-up withholding taxes, and the Employer-Paid Payroll Taxes with respect to settlement payments to Authorized Claimants. *Id*.

The remainder of the Common Fund, after the above amounts other than the Settlement Payments are deducted, is referred to in the Settlement Agreement as the Net Settlement Amount. *Id*., ¶ U. Collective Counsel estimates the Net Settlement Amount to be $627,502.67. The Net Settlement amount will be used to make the Settlement Payments to the Authorized Claimants on a pro-rata basis, using the formula in ¶ V, C of the Settlement Agreement. *See* below.

> The CLAIMS ADMINISTRATOR will divide the NET SETTLEMENT AMOUNT by the total number of full or partial work weeks that all Settlement Collective Members were employed as a CSR on the Humana, LA Care or Massachusetts Health Connector programs during the Relevant Period ("Per Work Week Amount"). The Claims Administrator will multiply the Per Work Week Amount by the total number of full or partial work weeks that each Settlement Collective

---

[9] Capitalized terms are defined in Appendix A of the Settlement Agreement.

Member was employed during the Relevant Period to arrive at an estimated SETTLEMENT PAYMENT for each member of the SETTLEMENT COLLECTIVE. Provided a SETTLEMENT COLLECTIVE member timely submits a fully completed claim form so as to become an AUTHORIZED CLAIMANT and member of the FINAL SETTLEMENT COLLECTIVE, such individual's SETTLEMENT PAYMENT will be paid as set forth in this Agreement and allocated as follows: 50% as wages; 50% as non-wage compensation, including liquidated damages related to the same claims. The CLAIMS ADMINISTRATOR will be responsible for issuing a form W-2 for the amount deemed wages and an IRS Form 1099 for the portions allocated to liquidated damages. DEFENDANT, individually and collectively, (a) will have no responsibility or liability whatsoever for the calculation of any SETTLEMENT PAYMENT, and (b) will have no obligation to pay a SETTLEMENT PAYMENT to any member of the SETTLEMENT COLLECTIVE who does not timely submit a fully completed CLAIM FORM.

**B. Notice and the Opt-in Process**

Within ten (10) calendar days after the Court's Approval Order becomes a final, non-appealable order, the Claims Administrator shall mail the Court-Approved Settlement Notice, Claim Form and self-addressed stamped envelope (or SASE) to each member of the Settlement Collective via First Class U.S. Mail. *Id.*, ¶ V, D. Prior to mailing, the Claims Administrator shall run the names and contact information of the Settlement Collective through the United States Postal Service's National Change of Address database ("NCOA"). *Id.* If a Settlement Notice is returned to the Claims Administrator as undeliverable, the Claims Administrator will perform a skip trace search for the individual. It will then re-mail the Settlement Notice to any new address found for the individual in question by First Class U.S. Mail.. *Id.* The Parties' proposed Settlement Notice and Claim Form are attached as Exhibits A and B to Settlement Agreement.

Each member of the Settlement Collective will have forty-five (45) calendar days from the date the Settlement Notice and Claim Form are mailed to timely submit a fully completed Claim Form. The Claim Form must be received by the Claims Administrator by U.S. Mail, email or facsimile so that it is received by the Claims Administrator no later than the Bar Date (45 days after it was mailed). *Id.*, ¶ V, F.

## C. The Limited Release for Authorized Claimants

Any member of the Settlement Collective that timely returns a completed Claim Form will become an Authorized Claimant. By participating in this settlement, the Authorized Claimants will *only* release their wage and hour claims against Defendant. *See*, *Id*., ¶ VII.A.1-5.

## D. Certification of a Settlement Collective

For purposes of the Settlement Agreement only, the Parties request that the Court certify the Settlement Collective, as defined below.

> The Settlement Collective shall consist of all current and former hourly CSRs who worked for Defendant on the Humana, LA Care or Massachusetts Health Connector programs at any time from June 5, 2020 to November 10, 2023, and did not previously participate in the settlement of a lawsuit that released the claims asserted in the Litigation.

*Id*., ¶ II; *id*., Appendix A, ¶ DD.

## E. Settlement Claims Administration Costs and Responsibilities

The Parties have agreed to utilize ILYM, Inc. to act as the Claims Administrator for this case. Ash Decl. at ¶49. The full duties of the Claims Administrator are set forth in ¶ IX of the Settlement Agreement. However, to summarize, the Claims Administrator will be responsible for, among other things: calculating the Net Settlement Amount; formatting and printing the Settlement Notice and Claim Form, then mailing same; mailing Settlement Payments; ascertaining current address; calculating the Employer's Share of Payroll Taxes; providing tax documents for the Final Settlement Collective; opening and maintain a qualified settlement fund; protecting the personal data of members of the Settlement Collective; maintaining all records related to the administration of the Settlement Agreement; and other tasks provided in the Settlement Agreement.

In deciding to retain ILYM for settlement/claims administration duties, the Parties obtained competing quotes from qualified settlement administrators. Further, the Parties performed an audit

of the settlement administrators, to ensure the security of the data.  Together, the Parties selected what they believed to be the best quote from ILYM, a qualified settlement administrator who passed the audit. The total estimated cost for claims administration of the Parties' Settlement Agreement is $30,000.00, which will be paid from the Common Fund. Ash Decl. at ¶¶51-52.

### F.  Collective Counsel's Attorney Fees

Under the terms of the Settlement Agreement, Collective Counsel seeks approval of attorneys' fees equal to one-third (33.33%) of the Common Fund, or $333,333.33, and Defendant does not oppose that request. As explained below, this fee, which is common in similar wage and hour class/collective actions across the country, will result in a lodestar multiplier well within the range of multipliers approved in this Circuit.

### G.  Collective Counsel's Litigation Costs and Expenses

As is often the case in a common fund settlement, the Parties' Settlement Agreement provides for Collective Counsel to be reimbursed for its reasonable litigation costs and expenses, subject to Court approval. These costs and expenses total $9,164.00 and include: filing fees, the damage expert expense, and Plaintiffs' share of the mediator's fees. *See*, Ash Decl. at ¶52. *See also*, *Exhibit 1*, ¶ VI, A; Appendix A, ¶ H, R.

### H.  Collective Representative Awards and General Release

The Settlement Agreement also provides Service Awards to the Named Plaintiffs as follows: Christine McCune, $5,000.00; Addesha Brady, $4,000.00, subject to Court approval. In exchange for these payments, the Named Plaintiffs will provide Defendant with a general release. *Id*., ¶ VII, B, 1-4. As explained below, Plaintiffs' believe these awards are modest in comparison to similar cases. Without the services of the Named Plaintiffs, this Settlement Agreement and the Common Fund would not be available to the Settlement Collective. Ash Decl. at ¶¶54-57.

## V.    LEGAL ARGUMENT

### A.  The Settlement Agreement is a Fair and Reasonable Resolution of a Bona Fide Wage and Hour Dispute

As an initial matter, "[l]itigants should be encouraged to determine their respective rights between themselves and there is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009). "There is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." *Id. See also*, *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 363 (E.D. Va. 2021) (same); *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (same).

"Approval of settlements in collective actions under the FLSA generally involves less stringent standards than Rule 23 class settlements." *DeWitt v. Darlington Cnty., S.C.*, No. 4:11-CV-00740-RBH, 2013 WL 6408371, at *3 (D.S.C. Dec. 6, 2013). *See also*, *Riddle v. City of Anderson, S.C.*, No. 8:12-CV-03480-TMC, 2015 WL 12830369, at *5 (D.S.C. Jan. 26, 2015) ("Irrespective of the test, approval of settlements in collective actions under the FLSA generally involves less stringent standards than Rule 23 class settlements."). Additionally, "[n]o hearing is needed to investigate the fairness" of FLSA collective action settlements." *Rosales v. Rock Spring Contracting LLC, et al*., No. 3:23CV407 (RCY), 2024 WL 1417955, at *4 (E.D. Va. Apr. 2, 2024).

"When considering a motion to approve a FLSA settlement agreement, courts weigh a number of factors, including: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits[;] and (6) the amount of the

settlement in relation to the potential recovery." *Patel v. Barot*, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014); *Fry v. Harrisonburg Sports Bar, Inc.,* 2024 WL 729223, at *1 (E.D. Va. Feb. 22, 2024).

Other Courts have articulated the settlement approval factors slightly differently. *See*, *Davis v. Terminix Co., Inc.*, No. 2:09CV309, 2011 WL 13234297, at *1 (E.D. Va. Oct. 11, 2011) ("District Courts generally consider several factors to evaluate a settlement's fairness: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity and likely duration of litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of plaintiff's counsel; (5) the opinions of class counsel and members concerning the fairness of the settlement; and (6) the probability of success on the merits and the amount of the settlement in relation to potential recovery."). Nonetheless, as explained below, all the above referenced factors favor approval of the Parties' Settlement Agreement.

Finally, Courts in this Circuit, and across the country, routinely approve settlements structured in the same fashion as the Parties' proposed Settlement Agreement. Indeed, just last week, a substantially similar settlement was approved in the *Rosales* matter. 2024 WL 1417955 (E.D. Va. Apr. 2, 2024). *See also*, *Hatzey v. Divurgent, LLC*, No. 2:18-CV-191, 2018 WL 5624300, at *5 (E.D. Va. Oct. 9, 2018)[10]; *Rineholt v. HFS Financial LLC, et al.,*, No. CV ABA-22-3253, 2024 WL 1243844, at *4 (D. Md. Mar. 21, 2024); *Horton v. Love's Travel Stops & Country Stores, Inc.*, No. 1:19CV1193, 2022 WL 2527824, at *4 (M.D.N.C. July 7, 2022).

Furthermore, while the proposed Settlement Agreement is structured as a FLSA collective settlement, the Authorized Claimants will receive a recovery under both the FLSA *and* under the common law claims asserted for non-overtime wages. Ash Decl. at ¶34. In other words, Plaintiffs

---

[10] *Report and recommendation adopted sub nom. Hatzey v. Divurgent, LLC.*, No. 2:18CV191, 2018 WL 5621967 (E.D. Va. Oct. 30, 2018).

have made a recovery on every claim asserted in the FAC. In short, the Parties' Settlement Agreement constitutes an outstanding result for the Settlement Collective.

### 1. The Extent of Discovery

"The first factor asks courts to consider the extent to which discovery has taken place. When looking at this factor, courts assess whether the parties have 'had adequate time to conduct sufficient discovery to fairly evaluate the liability and financial aspects of [the] case.'" *Brinkman v. Pete & Sons, Inc.*, No. 8:22-CV-01460-AAQ, 2023 WL 3794180, at *2 (D. Md. June 1, 2023) (*quoting Lomascolo* at *11).

In the present case, just like in *Brinkman*, the Parties were able to fairly evaluate the liability and financial aspects of the case through informal discovery. *See*, *Brinkman* at *2 ("While the parties in this case did not conduct formal discovery, '[b]y avoiding formal discovery, resources that otherwise would have been consumed by the litigation [can be] made available for settlement, and the risk and uncertainties for both parties [can be] reduced.'") (quoting *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 409 (D. Md. 2014)).

Similarly, in *Davis v. Kayree, Inc.*, No. 4:19CV55, 2020 WL 1479035, at *3 (E.D. Va. Mar. 24, 2020)[11], the parties requested a settlement conference a month after the initial scheduling order was entered. Prior to the settlement conference, the parties in *Davis* reached a settlement agreement. The Court found that the parties had fairly evaluated the liability and financial aspects of the case because "[d]espite being in the early stages of the case, in anticipation of the January 14, 2020 settlement conference, the parties engaged in a voluntary exchange of discovery."

Here, the Parties not only engaged in the voluntary exchange of discovery for purposes of mediation, but Collective Counsel also obtained from Defendant *all* the Settlement Collective's

---

[11] *Report and recommendation adopted*, No. 4:19CV55, 2020 WL 1472381 (E.D. Va. Mar. 26, 2020).

payroll data and hired a damages expert to assist them in preparing a damage model. Ash Decl. at ¶22. Further, as evidenced by the fact that the first mediation was unsuccessful, the Parties thoroughly analyzed and argued the strengths and weaknesses of the claims asserted.

As it pertains to certification, sufficient data and evidence was produced for Plaintiffs' Counsel to thoroughly evaluate the strengths and weaknesses of class/collective certification. For the vast majority of states, Plaintiffs would be unlikely to meet the numerosity requirement of Rule 23 should the CSRs be divided into Rule 23 state law classes. On the other hand, Plaintiffs believe a nationwide FLSA collective is much more likely, given the alleged similarities in the job duties of the individuals across the thirty-three (33) states the CSRs are scattered throughout.

In any case, the extent of discovery factor heavily favors settlement approval.

### 2. Stage of the Proceedings

In evaluating this factor, the Court must determine "whether proceedings have progressed to a stage 'sufficient to permit the parties and their counsel to obtain and review evidence, to evaluate their claims and defenses and to engage in informed arms-length settlement negotiations with the understanding that [trial] would be a difficult and costly undertaking." *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 204 F. Supp. 3d 846, 849–50 (D.S.C. 2016) (quoting *Lomascolo*, 2009 WL 3094955, at *11). However, courts do not discount a settlement simply because the resolution was reached early in the case. *See*, *Wegner v. Carahsoft Tech. Corp.*, No. CV PJM 20-00305, 2022 WL 316653, at *3 (D. Md. Feb. 1, 2022) (holding where the case "[is] far enough along for the parties to understand the issues and facts, but early enough to afford benefits in settling rather than proceeding to expend resources, [this] counsels in favor of approval of the settlement agreement.") *See also*, *Duprey* at 409 (holding early resolution allows litigants to devote "resources that otherwise would have been consumed by litigation" to settlement).

In fact, courts in this Circuit approve FLSA settlements even before the defendant has filed a responsive pleading. *See*, *Monzon v. Gali Serv. Indus., Inc.*, No. CIV.A. DKC 15-0286, 2015 WL 1650167, at *2 (D. Md. Apr. 13, 2015) (approving settlement where "[t]he parties agreed to settle at a very early stage of the proceedings, even before Defendants filed a responsive pleading to the complaint and before any formal discovery had taken place.").

In the present case, Defendant has produced all the attendance, schedule adherence, performance, timekeeping, training, and disciplinary policies related to the claims being asserted by the Settlement Collective in this case. Furthermore, Defendant has produced all the payroll data for the Settlement Collective. Ash Decl. at ¶17,22. Finally, the Parties engaged one of the most well-respected wage and hour mediators in the country. Thus, the case has proceeded far enough for the Parties to evaluate the claims/defenses and to engage in informed arms-length negotiations.

### 3. Absence of Fraud or Collusion

"Absent evidence to the contrary, a court may presume the parties have not engaged in fraudulent misconduct or colluded with one another in reaching a fair and reasonable settlement." *Davis* at *3; see also *Winingear v. City of Norfolk*, No. 2:12cv560, 2014 WL 3500996, at *3 (E.D. Va. July 14, 2014) (citation omitted). In this case, there is no evidence of fraud or collusion, and the settlement was reached with the assistance of a nationally respected wage and hour mediator. Thus, this factor also heavily favors settlement approval.

### 4. Experience and Opinion of Counsel

As illustrated in the attached declarations from Collective Counsel, they have collectively practiced law for over 40 years, all the attorneys representing Plaintiffs and the Settlement Collective have been practicing law for over fourteen (14) years, and they have extensive experience in complex wage and hour class and collective actions. Collective Counsel all fully

21

endorse this settlement as an outstanding result for the Settlement Collective. *Exhibits 2-4*.

Likewise, Defendant was represented by experienced wage and hour attorneys from a nationally recognized employment law defense firm. Thus, this factor favors approval.

### 5. Probability of Plaintiffs' Success on the Merits

Despite the Parties' settlement, this remains a highly contested case. In Defendant's Answer to Plaintiffs' FAC, Defendant denied any wrongdoing and asserted twenty-six (26) affirmative defenses. [D.E. 17.] In evaluating the probability of success, "a court's role is more a balancing of likelihoods rather than an actual determination of the facts and law in passing upon whether the proposed settlement is fair, reasonable and adequate." *Lomascolo,* supra at *10 (internal citations omitted). "A compromise is the essence of a settlement and the trial court should not make a proponent of a proposed settlement justify each term of a settlement agreement against a hypothetical or speculative measure of what concessions might have been gained since inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Id*. Furthermore, "[a] court is entitled to rely on the judgment of experienced counsel for the parties in performing this balancing task and absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel." *Id*.

First, even if Plaintiffs succeed on their claims, Defendant maintained policies that instructed CSRs to perform the bootup process on the clock. Under these facts, Plaintiffs will face a significant obstacle establishing that Defendant's violation (if proven) was willful. This would shorten the statute of limitations to two years and exclude many of the individuals and payments under the Parties' proposed Settlement Agreement. Similarly, if Defendant establishes its good faith defense, then no liquidated damages would be awarded. Either of these scenarios, and perhaps both scenarios, will drastically reduce Defendant's exposure.

On the other hand, other defenses, if established, will result in no recovery at all. For example, under the FLSAs regulations "work performed [] at home" must only be compensated if "the employer knows or has reason to believe that the work is being performed." 29 C.F.R. § 785.12. Similarly, if Defendant establishes its *de minimis* defense or the Portal-to-Portal Act defense, then Plaintiffs will make no recovery at all.

Next, it should be recognized that the FLSA only provides a remedy for unpaid overtime wages. From the onset of the case, Defendant has been particularly adamant that Plaintiffs will be unable to establish the existence of a contract to pay for the off-the-clock work alleged. Additionally, to the extent the existence of a contract can be established, Defendant asserts the claim is not suitable for nationwide class treatment, nor is the unjust enrichment claim. Absent establishing these claims, Plaintiffs will make no recovery of non-overtime wages.

In sum, the case at bar presents substantial factual and legal issues, and the outcome of litigation is far from certain. The Parties' proposed Settlement Agreement offers the nationwide Settlement Collective a substantial recovery of both overtime and non-overtime wages.

### 6. The Amount of the Settlement in Relation to the Potential Recovery[12]

Under Plaintiffs' damage model, based on the allegations in the FAC, Defendant's maximum overtime exposure (at 14 minutes) is $1,129,997.48, with approximately $8,416.40 of that amount as "gap time" overtime damages. The straight time damages under that model amount to $537,331.83. Thus, the maximum exposure under Plaintiffs' damage model is $1,667,329.31.

Accordingly, the Parties proposed $1,000,000.00 Common Fund Settlement Agreement is approximately 60% of Defendant's maximum exposure according to Plaintiffs' calculations. However, if FLSA liquidated damages are removed, then the Settlement Agreement represents

---

[12] All the numbers in this section are derived from Plaintiffs' damage model, which was prepared with the assistance of their damage expert, Eric Lietzow, CPA/ABV.

recovery of approximately 91% of Defendant's exposure under Plaintiffs' damages model. If a two, rather than a three, year statute of limitations is applied, and liquidated damages are awarded, then the Settlement Agreement provides recovery for 77% of Defendant's exposure under Plaintiffs' model. Finally, if a two-year statute of limitations is applied and liquidated damages are removed, then the Settlement Agreement provides a recovery of more than 100% of Defendant's exposure according to Plaintiffs' calculations.

Furthermore, in the opinion of experienced Collective Counsel, this settlement represents an excellent result. *See*, Exhibit 2-4. Thus, this factor strongly favors settlement approval.

**B. The Negotiated Attorney Fees and Litigation Expenses are Reasonable and Should be Approved by the Court in Their Entirety.**

"There are two approaches used for calculating attorney's fees within the Fourth Circuit: the percentage of the fund method and the lodestar method." *Dickey v. R.R. Donnelley & Sons Co.*, No. 1:18CV920, 2021 WL 1169245, at *3 (M.D.N.C. Mar. 26, 2021), citing *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 504 (M.D.N.C. 2018).

> The percentage of the fund method provides that the court award attorneys' fees as a percentage of the common fund, while the lodestar method requires the court to determine the hours reasonably expended by counsel that created, protected, or preserved the fund, then to multiply that figure by a reasonable hourly rate.

*Id*. (*internal quotations omitted*) (*quoting Phillips v. Triad Guar., Inc.*, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016)).  Notably, here Plaintiffs do not seek a fee award, but rather simply seek approval by the Court of the attorneys' fees amount set forth in the Settlement Agreement.

"Within this Circuit, the percentage of the fund approach is not only permitted, but is the preferred approach to determining attorneys' fees." *In re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031 Tax Deferred Exch. Litig.*, No. 3:09-CV-00054, 2012 WL 5430841, at *2 (D.S.C. Nov. 7, 2012), *citing Goldenberg v. Marriott PLP Corp.,* 33 F.Supp.2d 434, 438 (D.Md.1998). See also,

*Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 758 (S.D. W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases."). Indeed, "the percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases." *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 503 (E.D. Va. 1995). This is true in FLSA common fund cases too. *See*, *Rosale*s, at \*8 (approving the requested 27% and holding "a fee award determined by percentage is preferred over the lodestar method in common fund cases such as this"); *Hatzey,* at \*4 (E.D. Va. Oct. 9, 2018) (approving 33.33% of FLSA common fund with 6.4 multiplier and noting a preference for fees based on a percentage).

In regards to evaluating attorney fees in a common fund settlement, "[t]his circuit has not yet identified factors to consider when using this method, but district courts in this circuit have analyzed the following seven factors: "(1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy." *Rosales*, at \*9; *Graham v. Famous Dave's of Am., Inc.*, No. CV DKC 19-0486, 2022 WL 17584274, at \*10 (D. Md. Dec. 12, 2022); *see also*, *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 464 (S.D.W. Va. 2010).

As explained below, each of the seven factors used to determine the reasonableness of Collective Counsel's fee request in this common fund settlement strongly support approval. "Importantly, there is no specific formula for analyzing these factors." *Rosales*, at \*9.

**1. The Results Obtained for the Class**

In the Fourth Circuit, "the most critical factor in calculating a reasonable fee award is the degree of success obtained." *Randle v. H&P Capital, Inc.*, 513 F. App'x 282, 284 (4th Cir. 2013)

(citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Success warranting attorneys' fees occurs when the moving party "achieves some of the benefit the parties sought in bringing the suit." *Arvinger v. Mayor and City Council of Baltimore*, 31 F.3d 196, 200 (4th Cir. 1994).

This factor is addressed more thoroughly above. However, in short, the FAC contained three counts: violation of the FLSA, breach of contract, and (in the alternative) unjust enrichment. [D.E. 16.] Plaintiffs' believe that the proposed Settlement represents a substantial recovery on all three counts. The FAC alleged 14 minutes unpaid time, and Plaintiffs believe that the proposed Settlement would provide the entire Settlement Collective for 9 minutes of straight time and overtime pay, plus liquidated overtime damages, based upon a three-year statute of limitations. Furthermore, at the mediation, Defendant provided strong arguments and evidence that the alleged unpaid tasks took a fraction of the time alleged in the operative complaint. Regardless, in the opinion of Collective Counsel, the proposed Settlement provides an excellent recovery, which weighs in favor of fee approval. *See*, *Gomez v. Seoul Gool Dae Gee Inc.*, 434 F. Supp. 3d 381, 387 (E.D. Va. 2020) ("Plaintiff may have obtained a larger recovery had the case gone to trial. However, there was also the possibility that the Court or jury might have awarded Plaintiff less than he is now recovering or entirely rejected Plaintiff's theory of liability.").

## 2. The Quality Skill and Efficiency of the Attorneys Involved

This factor is also addressed above, in paragraph A, 4, and in Collective Counsel's declarations. *Exhibits 2-4*. In the present case, all three attorneys that represented Plaintiffs and the putative Settlement Collective have fourteen (14) years or more of experience, and in the instance of Andrew Frisch, over 20 years experience. *See generally*, *id*., *Exhibit 2*, PL Counsel Decl. Attorneys Ash and Frisch have long dedicated their entire practice to handling complex class and collective wage and hour cases throughout the country. Furthermore, Attorney Ash has developed

an expertise in call center cases just like this one, having litigated over forty (40) class/collective action wage and hour call center cases in federal courts across the country. Ash Decl. at ¶6.

Similarly, Defendant was represented by one of the largest and most well-respected employment defense firms (Littler Mendelson) in the country. Not surprisingly, each of the attorneys that defended the case were extremely experienced wage and hour litigators.

In evaluating this factor, many Courts review the attorneys' "expertise in complex litigation . . . [and] history of success in difficult, high-stakes litigation." *In re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031 Tax Deferred Exch. Litig.*, No. 3:09-CV-00054, 2012 WL 5430841, at *5 (D.S.C. Nov. 7, 2012); *see also Braun v. Culp, Inc.*, No. C-84-455-G, 1985 WL 5857, at *2 (M.D.N.C. Apr. 26, 1985). Given the highly experienced wage and hour litigators on both sides, this factor weighs heavily in favor of approval of the fee provided in the Settlement Agreement.

### 3. The Risk of Nonpayment

"In determining the reasonableness of an attorneys' fee award, courts consider the relative risk involved in litigating the specific matter compared to the general risks incurred by attorneys taking on class actions on a contingency basis." *Kay Co.*, at 466. "The contingency nature of the fee agreement puts a substantial risk of loss on Plaintiffs' counsel, because he does not get paid unless he is successful in obtaining some recovery in the case on behalf of Plaintiffs." *DeWitt*, at *8. *See also*, *Amaya v. DGS Constr., LLC*, No. CV TDC-16-3350, 2023 WL 8188628, at *3 (D. Md. Nov. 27, 2023) (holding "Class counsel took the case on a contingency basis and thus endured a serious risk of non-payment, and awards of 33 percent of the common fund are granted in similar class action cases involving unpaid employee compensation.").

Here, there was a significant risk of non-payment, not only based on the contingency nature of the work, but also under the facts of the case that involved remote workers scattered across the

country. Furthermore, the Defendant was a national corporation, which would surely hire top-of-the-line representation, with significantly more monetary resources available for litigation. This risk was amplified by the $9,164.00 Collective Counsel was required to put on the line.

### 4. Objections by Members of the Class to the Settlement

This factor favors approval of the fees because under a FLSA common fund structure, there are no absent class members. Stated differently, under the Settlement Agreement, each Settlement Collective member will have the opportunity to review and approve Collective Counsel's fee request before deciding whether to participate in the settlement.

### 5. Awards in Similar Cases

In *Winnigear v. City of Norfolk*, 2014 WL 3500996, at *6 (E.D. Va. July 14, 2014), the court noted that courts "routinely approve [fee] percentage recoveries in FLSA cases approaching forty percent of the total recovery." Indeed, in the present case, Plaintiffs retained Collective Counsel pursuant to a 40% of the common fund contingency fee agreement. Ash Decl. at ¶46. However, Plaintiffs have agreed to only seek 33% of the common fund.

"In this jurisdiction, contingent fees of one-third (33.3%) are common. This factor provides support for the reasonableness of the requested fee award." *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007). *See also*, *Dickey* at *4 (holding "an award of one-third of a common fund in FLSA actions appears to be a fairly common percentage."); *DeWitt* at *9 (same); *McClaran v. Carolina Ale House Operating Co., LLC*, No. 3:14-CV-03884-MBS, 2015 WL 5037836, at *5 (D.S.C. Aug. 26, 2015) ("After reviewing awards in other wage and hour cases brought as FLSA collective actions and class actions, it appears that the percentage requested here is reasonable. In a number of cases, courts found that a fee award of one-third of the settlement fund was reasonable.").

The percentage used in calculating a given fee award may follow a sliding-scale and may bear an inverse relationship to the amount of the settlement. *See Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 438 (D. Md. 1998). Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable. *See, e.g.*, *id.* (*citing In re First Fidelity Bancorporation Sec. Litig.*, 750 F. Supp. 160 (D.N.J. 1990) (awarding 30% of first $10 million of fund, 20% of next $10 million, 10% of any recovery greater than $20 million). Here, the size of the proposed $1,000,000.00 Common Fund settlement weighs in favor of granting the requested fee award of 33.33% of the common fund.

"Contingent fees of up to one-third are common in this circuit." *See, e.g.*, *Kelly v. Johns Hopkins Univ.* , No. 1:16-CV-2835-GLR, 2020 WL 434473, at *3 (D. Md. Jan. 28, 2020) (listing authority approving one-third of common fund and awarding one-third of the settlement proceeds, or $4,666,667); *Hollis v. Valley Proteins Inc.*, No. 3:21-CV- 00112-FDW-DSC, 2022 WL 703606 (granting plaintiffs' motion for attorneys' fees in the amount of one-third, $2,250,000.00); *Tom v. Hospitality Ventures,* LLC, No. 5:17-CV-98-FL, Dkt. 238 (awarding plaintiffs' counsel's request for attorneys' fees in an amount exceeding 33% of the settlement fund); *Velasquez-Monterrosa v. Mi Casita Rests.*, No. 5:14-CV-448-BO, Dkt. 119 ("Class Counsel's request for one-third of the Gross Settlement Amount is 'reasonable and appropriate' for wage and hour collective/class litigation in the Fourth Circuit."); *Myers*, 2020 WL 1815902, at *6 (granting plaintiffs' motion for attorneys' fees, awarding class counsel one-third of the gross maximum settlement amount, and noting "the percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases"); *Reynolds*, 2020 WL 92092, at *3 ("class counsel's request for a fee of $1,000,000, reflecting one-third of the monetary recovery provided to class members in the settlement agreement, is reasonable following consideration of

the twelve Barber factors."); *Thomas v. FTS USA, LLC,* No. 3:13-CV-825, 2017 WL 1148283, at \*5 (E.D. Va. Jan. 9, 2017), report and recommendation adopted, No. 3:13-CV- 825, 2017 WL 1147460 (E.D. Va. Mar. 27, 2017) (approving a one-third fee of a $1.3 million settlement, plus $50,000 in costs, and finding that "a fee award of one-third of the settlement fund would be consistent with that awarded in other cases."); *Hackett v. ADF Rest. Investments*, 259 F. Supp. 3d 360, 369 (D. Md. 2016) (approving class counsel one-third of settlement); *Phillips*, 2016 WL 2636289, at \*9 (approving a 30% fee award on a $1.6 million settlement, plus over $100,000 in expenses); *McClaran* 2015 WL 5037836, at \*5 (D.S.C. Aug. 26, 2015) ("In a number of [wage and hour] cases, courts found that a fee award of one-third of the settlement fund was reasonable."); *Archbold v. Wells Fargo Bank, N.A.*, No. 3:13-CV-24599, 2015 WL 4276295, at \*7 (S.D.W. Va. July 14, 2015) (same); *Kirven v. Cent. States Health & Life Co. of Omaha*, No. CA 3:11-2149-MBS, 2015 WL 1314086, at \*13 (D.S.C. Mar. 23, 2015) (same); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 482 (D.Md. 2014) (approving a one-third award because of the contingency fee basis, complexity of the matter, and risk); *McDaniels v. Westlake Servs., LLC*, No. CIV.A. ELH-11-1837, 2014 WL 556288, at \*15 (D. Md. Feb. 7, 2014) (same); *DeWitt*, 2013 WL 6408371, at \*7 (same); *McLaurin*, 2012 WL 12910993, at \*2 (approving one-third of a $1.8 million FLSA/NCWHA settlement for attorney's fees); *In re Red Hat, Inc. Sec. Litig.*, No. 5:04-CV-473-BR, 2010 WL 11668099, at \*1 (E.D.N.C. Dec. 10, 2010) (approving $6 million in attorney's fees from a $20 million settlement, equating to 30%); *Helmick v. Columbia Gas Transmission*, No. CIV.A.2:07-CV-00743, 2010 WL 2671506, at \*5 (S.D.W. Va. July 1, 2010) ("[A] fee award in the amount of 33 1/3 % (one-third) is reasonable); *Hoffman v. First Student, Inc.*, No. CIV. WDQ-06-1882, 2010 WL 1176641, at \*3 (D. Md. Mar. 23, 2010) (same); *see generally* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An*

30

*Empirical Study*, 1 J. of Empirical Legal Studies, 27, 31-33 (2004) (finding that courts consistently award between 30% and 33% of the common fund in class action settlements); Newberg on Class Actions § 15:73 (5th ed.) (stating that most contingency agreements permit an attorney to receive one-third of his/her client's recovery).

Accordingly, the fifth factor also supports approval of Collective Counsel's fees.

### 6. The Complexity and Duration of the Case

"Generally, to successfully pursue an FLSA case, plaintiff's attorneys must possess a range of specialized skills and current knowledge of legal developments in order to properly navigate discovery, withstand motions, and prove liability." *Garcia v. Decalo Med. Grp., LLC*, No. 14-CV-00301, 2015 WL 9311984, at *6 (D. Md. Dec. 23, 2015). *See also*, *Reynolds,* supra at *3 (holding "[c]lass [c]ounsel's work required considerable skill both in litigation and in this substantive [wage and hour] area of law."). Furthermore, "the skill required to properly perform the legal services rendered weighs in favor of approving the fee because FLSA collective actions involve law which changes regularly due to growing jurisprudence across the country." *Kirkpatrick, supra* at 505.[13]

Thus, the sixth approval factor also favors approval of Collective Counsel's fees.

### 7. Public Policy

The seventh factor, public policy, also favors approval of Collective Counsel's requested fees in this FLSA case.

> "Fee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.' "

*Webb v. Daymark Recovery Servs., Inc.*, No. 1:21CV424, 2023 WL 9233967, at *3 (M.D.N.C.

---

[13] See also, *Hilderbrand v. Pelham Transporation Corp.*, No. 1:20-CV-1020, 2022 WL 19974169, at *4 (M.D.N.C. Mar. 22, 2022) (same); *Ford v. Cardinal Innovations Healthcare Sols.*, No. 1:20-CV-736, 2022 WL 558376, at *4 (M.D.N.C. Jan. 21, 2022) (same).

May 26, 2023). In rendering awards of attorneys' fees, courts within the Fourth Circuit take into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation. *See Phillips v. Triad Guar. Inc.*, No. 1:09CV71, 2016 WL 2636289, at *8 (M.D.N.C. May 9, 2016); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 760 (S.D.W. Va. 2009); *In re Wachovia Corp. ERISA Litig.*, No. 3:09CV262, 2011 WL 5037183, at *5-6 (W.D.N.C. Oct. 24, 2011). The FLSA is a remedial statute designed to protect the wages of workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (referring to the FLSA's "remedial and humanitarian" purpose); *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 133 (4th Cir. 2017) (referring to the FLSA's "remedial and humanitarian" purpose) (citing *Tenn. C. v. Muscoda*, 321 U.S. 590, 597 (1944)). In order to achieve those remedial objectives and protect employees, courts recognize that adequate fee awards are essential for those who step forward to represent employees with wage and hour claims. *See Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 246 (4th Cir. 2010); *DeWitt*, 2013 WL 6408371, at *10.

Accordingly, each of the factors used in this Circuit to review attorney fees under the preferred percentage of the fund method favor approval of Collective Counsel's requested fees. "[T]here is no specific formula for analyzing these factors," and "the Court need not tirelessly consider each factor." *Rosales*, at *9. Furthermore, "the proposed fee award is well below the 40% interest that Named Plaintiffs agreed to in their representations agreements with counsel." *Id*.

Importantly, as illustrated by cases like *Rosales*, the Court is not required to wade through the cumbersome twelve factors used in a lodestar analysis from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (1974), adopted by this Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). *See*, *Rosales* at *9 (noting the "*Barber*" factors (a.k.a. "Johnson" factors) are used to evaluate fee requests under the lodestar method). However, in *Hatzey*, the court

performed a cursory review of the *Johnson* factors in conducting a lodestar cross check.

The *Johnson* factors are largely duplicative of the settlement approval factors and common fund fee approval factors outlined above. However, if the Court chooses to analyze the *Johnson* factors, each of the factors supports approval of the subject fee request.

The twelve *Johnson* factors used to evaluate lodestar fee requests are as follows:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). However, "in determining whether the fee is reasonable, this court is not required to strictly apply the factors in every case since all of the factors are not always applicable." *McClaran v. Carolina Ale House Operating Co., LLC*, No. 3:14-CV-03884-MBS, 2015 WL 5037836, at *3 (D.S.C. Aug. 26, 2015). "Finally, and most importantly, when a district court determines what fee is reasonable, the most critical factor in that determination is the degree of success obtained." *Doe v. Chao*, 435 F.3d 492, 505 (4th Cir. 2006).

First, Collective Counsel has already incurred approximately $170,220.00 in attorney fees. Ash Decl. at ¶45. However, Collective Counsel's work is far from complete. Assuming the Court approves the Parties' proposed Settlement Agreement, Collective Counsel will oversee the claims administration process. Notice of the Settlement Agreement will be mailed to more than 2,600 CSRs, many of which will inevitably have questions regarding the Settlement Agreement, require assistance submitting their claim forms, or otherwise wish to speak to Collective Counsel. The

Claims Administrator will supply the Parties with weekly reports and may likewise have questions regarding the claim forms received. At the conclusion of this case, it is reasonably anticipated that Collective Counsel will incur another $10,000 to $20,000 in fees.

Next, Courts in this Circuit have recognized that FLSA collective actions are "procedurally and substantively complex," and thus, the second *Johnson* factor supports approval of the fee request. *Kirkpatrick* at 505. *See also*, *Reynolds v. Fid. Invs. Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 92092, at *3 (M.D.N.C. Jan. 8, 2020) (citing *Kirkpatrick* and holding same); *Dennis v. Sandhills Emergency Physicians, P.A.*, No. 1: 20CV00273, 2022 WL 4484338, at *3 (M.D.N.C. Sept. 27, 2022) (holding this factor supports approval of the requested fees even where the "case did not involve any novel FLSA issues … [because] overtime cases under the FLSA can be complex and difficult."); *Garcia* at *6 (D. Md. Dec. 23, 2015) (recognizing "wage and hour cases pose certain challenges" and holding second *Johnson* factor was satisfied).

In analyzing the fourth *Johnson* factor, courts consider the contingency of the litigation to determine the "opportunity costs or preclusion from other employment." *Lewis v. J.P. Stevens & Co.*, 849 F.2d 605 (4th Cir. 1988); *see also Gilbert LLP v. Tire Eng'g & Distribution, LLC*, 689 F. App'x 197, 201 (4th Cir. 2017) ("[c]ontingency agreements transfer a significant portion of the risk of loss to the attorneys" (*quoting In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010)).); *Goodman v. Phillip R. Curtis Enters., Inc.*, 809 F.2d 228, 235 (4th Cir. 1987) (same).

Indeed, "[c]lass and collective wage and hour cases require intensive resources, and— particularly when counsel operate, as here, on a contingency basis—pursuing these cases involves opportunity costs and risk." *Reynolds* at *3.

In the present lawsuit, Collective Counsel undertook this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant

risk. Ash Decl. at ¶47. Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. *See*, *Wai Man Tom V. Hosp. Ventures LLC*, 980 F.3d 1027, 1034 (4th Cir. 2020) (explaining "FLSA provisions are difficult to apply," and due to the "lack of guidance," the court (and attorneys) must delve into the "morass of FLSA statutory and regulatory provisions. Doing so makes us sympathize with both employers and employees who must try to understand them."). Furthermore, any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. *Id*. ¶ 65-66. Collective Counsel stood to gain nothing in the event the case was unsuccessful. *Id*. Accordingly, the opportunity costs in this action, requiring a large investment of time, energy, and resources, with no guarantee of success, were significant. *See generally*, *Exhibits 2-4*, Collective Counsel Decl.

Moreover, the size of Plaintiffs' counsel's practice, and the time demands of the litigation, may support this *Barber* factor and/or increase attorneys' fees for a prevailing plaintiff. *See Reynolds*, 2020 WL 92092, at *3 ("[c]lass [c]ounsel's law firms are small enough that the choice to take one case over another affects the firm's ability to accept other paying work, and the work involved in this case was extensive."); *DeWitt v. Darlington Cnty., S.C.*, No. 4:11-CV-00740-RBH, 2013 WL 6408371, at *11 (D.S.C. Dec. 6, 2013) (finding the fourth *Johnson* factor satisfied and recognizing an investment of over 187 hours, "represents a significant opportunity cost for an attorney, especially a solo practitioner … in terms of other cases that could have been handled during the same period," and where counsel "advanced all the costs of [the] litigation").

In this case, lead counsel for the Plaintiffs, Charles Ash, is a solo practitioner. Ash Decl. at

¶47. He, along with his co-counsel, have spent hundreds of hours litigating and settling this action with many more hours required overseeing the settlement and claims administration process. Accordingly, the opportunity costs in this litigation were significant and favor approval.

The fifth *Johnson* factor, "customary fee for like work," also favors approval of the requested fees. Collective Counsel customarily charges between four hundred ($400) to six hundred ($650) per hour for their highly specialized services. *Exhibit 2-4*. As referenced above, attorney Ash has litigated approximately 40 class action call center cases in federal court. *See*, *Gholston v. Smithfield Foods, Inc.*, No. 2:21-CV-194, 2022 WL 21842305, at *6 (E.D. Va. Nov. 2, 2022)(approving $500 per hour in FLSA case); *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 367 (E.D. Va. 2021) (approving $430 in a FLSA case). Additionally, Courts in this circuit may enhance attorneys' fees "when the prevailing party can establish that, absent an adjustment, [the plaintiffs] 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'" *Lewis*, 849 F.2d at 605 (*quoting Delaware Valley*, 482 U.S. at 731 (1987)). Here, Collective Counsel has thoroughly searched the internet and, respectfully, has been unable to find any employment law firm in Newport News that specializes in wage and hour matters, let alone a firm with Collective Counsel's experience in call center wage cases. This fact lends support to approval of the fee request under the fifth and tenth *Johnson* factor.

Regarding the sixth factor, Collective Counsel took on significant risk of nonpayment, the burden of advancing litigation expenses, and the substantial opportunity costs of having to turn back other lucrative work were all factors that motivated Collective Counsel to perform work of the highest quality. According to the Supreme Court, "[t]he fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,

483 U.S. 711, 723 (1987) (citations omitted). "Courts have generally recognized that a contingent fee lawyer may have the right to expect a fee greater than if his fee were guaranteed." *Va. Acad. of Clinical Psychologists v. Blue Shield of Va.*, 543 F. Supp. 126, 148 (E.D. Va. 1982). This case was a high-stakes proposition, which justifies the requested fee.

The seventh factor, time limitations imposed by the circumstances, likewise favors approval of the requested fee. Priority work that takes time away from the lawyer's other legal work is entitled to some premium. *See In re Steel Network, Inc.*, No. 09-81230, 2011 WL 4002206, at *10 (Bankr. M.D.N.C. June 27, 2011); *Va. Acad. of Clinical Psychologists*, 543 F. Supp. at 148-49; *see also Hyatt v. Heckler*, 586 F. Supp. 1154, 1158 (W.D.N.C. 1984).

In the present case, time was of the essence. The call center industry is known for its astonishingly high turnover rate. In fact, recent studies placed the call center turnover rate at 38% in 2022.[14] Given the notoriously high turnover rate in the call center industry, it was critical that Collective Counsel aggressively litigate this case. Many members of the Settlement Collective are former employees of Defendant who, at any time, could move never to be found again. *See*, *Gomez* at 387 (holding *Johnson* factor 7 weighed in favor of approving the requested fees where the plaintiff sought to move to a different country). Unlike a traditional Rule 23 class action, the FLSA statute of limitations is not tolled for the Settlement Collective by the filing of the complaint. As such, Plaintiffs needed to quickly seek conditional certification, which they successfully did (albeit by a stipulation). Nonetheless, this was high priority work, and this *Johnson* factor favors approval.

Regarding the eleventh *Johnson* factor, a first-time, one-time, and/or contingency relationship may render this factor irrelevant from the attorneys' fee analysis, and therefore inconsequential. *See Price v. City of Fayetteville, N.C.*, No. 5:13-CV-150-FL, 2015 WL 1222168,

---

[14] See, https://finance.yahoo.com/news/call-center-attrition-rate-now-121800604.html (last visited 4/1/2024).

at *6 (E.D.N.C. Mar. 17, 2015); *DeWitt*, 2013 WL 6408371, at *13; *Bunn v. Bowen*, 637 F. Supp. 464, 472 (E.D.N.C. 1986). In contrast, an on-going relationship with a client who brings repeat business to a firm tends to lead to lower hourly rates. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1300, 1305 (11th Cir. 1988); *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). In situations such as this, with a one-time retention not likely to lead to repeat business from the same client, rates should be higher than what firms obtaining repeat business charge. Given the unlikely repeat representation of Plaintiffs involved in the action here, this factor further supports Plaintiffs' counsel's requested fees.

Finally, the last *Johnson* factor, awards in similar cases, was addressed in the common fund fee approval analysis above. Indeed, should the Court look to *Johnson* lodestar factors as a cross-check for the percentage of the fund fee request, then Collective Counsel's fee request is reasonable.

Collective Counsel's requested fee for one-third of the Common Fund - $333,333.33 – is more than their calculated "lodestar." However, especially when supported by the *Johnson* factors, "[t]he range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5." *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013). *See also*, *Reynolds* at *4 (same); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 766 (S.D.W. Va. 2009) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee.") Indeed, Courts in this Circuit regularly approve multipliers within, or even above, those ranges. *Hatzey* at *15-16 (E.D. Va. Oct. 9, 2018) (approving a multiplier of 6.4 in a FLSA settlement); *Fangman*, 2016 U.S. Dist. LEXIS 160434, at *36 (approving a multiplier of 5.6); *Nieman v. Duke Energy Corp.*, 2015 U.S. Dist. LEXIS 148260, at *5 (W.D.N.C. Nov. 2, 2015) (approving "an upward variance from a 4.5 multiplier"); *Deloach*, 2003 WL 23094907, at *11 (approving a 4.45 multiplier to a lodestar of approximately $16

million, bringing the fee award to approximately $70 million); *Goldenberg*, 33 F. Supp. 2d at 439 n.6 (approving a 3.6 multiplier, and stating that it was "well within the average range of 3-4.5 for comparable cases."); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) (approving a fee award with a lodestar multiplier of approximately 3.8, as lodestar multipliers "on large and complicated class actions have ranged from at least 2.26 to 4.5"); *Kay Co. v. Equitable Production Co.*, 749 F. Supp. 2d 455, 470 (S.D.W. Va. 2010) (noting that, in a class action under Rule 23, "lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee"); *Johnson v. Big Lots Stores, Inc.,* 639 F. Supp. 2d 696, 705 (E.D. La. 2009) (stating that a lodestar award is presumptively reasonable and should be modified only in exceptional cases, but the court may enhance the award based upon application of the factors considered for an attorney fee award).

Here, Collective Counsel has invested over 296.37 hours litigating and settling this matter. The time spent by each respective attorney is described in their declaration. *Exhibits 2-4*. Based on their customary hourly rates, the Parties' proposed Settlement Agreement currently provides a lodestar multiplier of 1.95. However, as noted above, that multiplier will be significantly lower when all is said and done because the work on this case is far from over.

### C.    The Litigation and Settlement Administration Costs/Expenses are Reasonable

Plaintiffs have reasonably incurred a total of $9,164.00 in litigation expenses. The expenses are detailed in Collective Counsel's declarations. Receipts are available upon request.

### D.    The Class Representative Service Payments Are Reasonable

Under the Parties' proposed Settlement Agreement, the two class representatives will each receive Service Payments upon Court approval. Under the Settlement Agreement, the initial Plaintiff that started the case, Christina McCune, will receive $5,000.00, and her Co-Plaintiff,

Addesha Brady, will receive $4,000.00. Service payments are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them for having previously filed a lawsuit against their former employer. "Courts around the country have approved substantial incentive payments in FLSA collective actions and other employment-related class actions." *DeWitt* at *14 (collecting cases). Moreover, the amounts proposed are well within the range of Service Payments in similar cases. *See, e.g.*, *Curtis v. Genesis Eng'g Sols., Inc.*, No. GJH-21-722, 2022 WL 1062024, at *7 (D. Md. Apr. 8, 2022) (approving $5,000 service award); *Lewis v. Precision Concepts Grp. LLC*, No. 1:18CV64, 2021 WL 7185505, at *7 (M.D.N.C. Mar. 23, 2021) (approving $5,000 service awards); *Compton v. N. Cent. Virginia Restaurants, Inc.*, No. 5:20-CV-00073, 2022 WL 4008719, at *6 (W.D. Va. Sept. 2, 2022) (approving $5,000.00 service award); *Kirkpatrick*, 352 F. Supp. 3d at 508 (approving $10,000 service award).

In this case, the Named Plaintiffs acted to protect the interests of a potential collective and those actions resulted in what Plaintiffs' regard as a substantial benefit to a large group of their fellow employees. They took time to assist counsel in developing the case and risked potential retaliation from their current and future employers for the benefit of their Settlement Collective. Ash Decl. at ¶¶54-57. Therefore, the Service Payments requested are reasonable and fully justified under the circumstances of this case.

## VI.    CONCLUSION

For all of the reasons stated herein, Plaintiffs respectfully request that the Court approve the parties proposed Settlement Agreement in full, including the payment of Service Payments, Collective Counsel's fees, and litigation and claims administration expenses.

[*Signatures of Counsel on following page.*]

Dated: April 9, 2024          Respectfully Submitted,

**MORGAN & MORGAN DC, PLLC.**

*s/ Christopher M. FitzPatrick*
Christopher M. FitzPatrick, Esquire
(VA Bar No. 90394)
**MORGAN & MORGAN DC, PLLC.**
1901 Pennsylvania Avenue, N.W. Suite 300
Washington, DC 20006
**Phone:** (202) 772-0566
**Fax:** (202) 772-0616
CFitzpatrick@forthepeople.com

Andrew R. Frisch, Esquire
(Pro Hac Vice)
**MORGAN & MORGAN, P.A.**
8151 Peters Road
Plantation, FL 33324
Phone: (954) WORKERS
Fax: (954) 327-3013
AFrisch@forthepeople.com

**ASH LAW, PLLC**
Charles R. Ash, IV, Esquire (P73877)
(Pro Hac Vice)
402 W. Liberty St.
Ann Arbor, MI 48103-4388
Phone: (734) 234-5583
cash@nationalwagelaw.com

**HOOPER HATHAWAY, P.C.**
Oscar Rodriguez, Esquire (P73413)
(Pro Hac Vice)
126 Main St
Ann Arbor, MI 48104-1903
Phone: (734) 662-4426
orod@hooperhathaway.com

*Counsel for Plaintiffs and the
Putative Collective/Class Members*