IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| CHRISTINA MCCUNE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FANEUIL INC., <br><br> Defendant. | Case No. 4:23-cv-41 |

**OPINION & ORDER**

Before the Court is the plaintiffs' Unopposed Motion for Settlement Approval. ECF No. 37. The Court has considered the arguments in the briefing and concluded there is no need to hold a hearing on the motion. *See* Fed. R. Civ. P. 78(b); E.D. Va. Civ. R. 7(J). For the reasons stated herein, the motion is **GRANTED.**

**I.   BACKGROUND**

On March 30, 2023, plaintiffs Christina McCune and Addesha Brady brought a putative collective action[1] on behalf of themselves and other hourly, remote customer service representatives ("CSRs") employed by Defendant Faneuil Inc. ("Faneuil"),[2] claiming that Faneuil violated the Fair Labor Standards Act ("FLSA"),

---

[1] The plaintiffs brought this case as a "collective and class action." ECF No. 1 at 1. Because it did not reach the certification stage and the parties' settlement agreement contemplates a settlement collective, the Court will refer to the matter as a collective action.

[2] Faneuil "provides business process outsourcing services" by employing hourly CSRs. ECF No. 1 at ¶¶ 2–5.

1

29 U.S.C. § 201, *et seq.*[3] ECF No. 1. The plaintiffs filed an Amended Complaint on June 29, 2023, which "narrow[ed] the scope of the collective to include only the projects the [n]amed [p]laintiffs worked on for Defendant." ECF No. 16; ECF No. 37 at 9 (citation omitted).[4] The parties agreed to exclude allegations concerning "the Kronos timekeeping system outage" from the complaint. ECF No. 37 at 9 n.3. In the months following, the parties engaged in informal discovery, undertook formal mediation, and collaborated in the drafting and negotiation process for the instant Settlement Agreement. ECF No. 37-1 at 8–9. The plaintiffs filed the unopposed motion for settlement approval on April 9, 2024. ECF No. 37.

## II. LEGAL STANDARDS

### A. Certification of Collective Actions

Under the FLSA, plaintiffs may bring a collective action against their employer on behalf of themselves or others similarly situated to them. 29 U.S.C. § 216(b). To determine whether the employees are similarly situated to a plaintiff bringing an action, "district courts within the Fourth Circuit have uniformly followed the two-step approach set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)." *Thomas, et al. v. Maximus, Inc.*, No. 3:21-cv-498, 2022 WL 1482010, at *2 (E.D. Va. May 10, 2022) (After applying the two-step approach, the district court permitted an interlocutory appeal to resolve ambiguity as to the applicable

---

[3] The Complaint also includes state-law breach-of-contract and unjust-enrichment claims. ECF No. 1 ¶¶ 244–267.

[4] This Opinion and Order uses the pagination assigned by CM/ECF rather than the parties' pagination.

standard for certifying collective actions, and the Fourth Circuit denied review.) (internal quotations omitted). The two-step approach consists of (1) the "notice" or "conditional certification" stage and (2) the "decertification" stage. *Id.* at \*2. The instant matter is before the Court at step one—the notice stage.[5]

During the "notice" stage, courts determine whether the proposed collective action is "similarly situated," to the Named Plaintiff. *Winks v. Va. Dep't of Transp.*, No. 3:20-cv-420, 2021 WL 2482680, at \*2 (E.D. Va. June 17, 2021). Although the Fourth Circuit has yet to define "similarly situated," "the primary focus is whether the potential plaintiffs are similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined." *Id.* (quotation marks omitted) (collecting cases).

FLSA's certification requirements aim to address class-wide claims while avoiding "becoming bogged down by individual differences among class members." *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 832 (E.D. Va. 2008). Thus, at the notice stage, the plaintiff's burden to show that the collective is "similarly situated" is relatively lenient, as it requires plaintiffs to make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Purdham v. Fairfax Cnty. Pub.*

---

[5] The Court will not reach the second stage, "decertification," in its analysis because the parties have not engaged in formal discovery and the defendant has not yet opposed certification. *See Houston v. URS Corp.*, 591 F. Supp. 2d 827, 832 (E.D. Va. 2008) ("The court proceeds to the second step if the defendant files a motion for decertification, which usually occurs after discovery is virtually complete.") (citation omitted); ECF No. 37 at 8 n.2 (defendant reserving the right to seek decertification should the Court deny settlement approval), 9 (discussing *informal* discovery).

*Schs.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (quoting *Choimbol*, 475 F. Supp. 2d at 563) (quotation marks omitted). "Insubstantial differences in job duties, hours worked[,] and wages due that do not materially affect whether a group of employees may be properly classified are not significant to the 'similarly situated' determination." *Thomas*, 2022 WL 1482010, at *2 (quoting *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 468 (E.D. Va. 2014)) (quotation marks omitted).

### B.   FLSA Settlement Approval

"All FLSA settlements must be approved either by the United States Department of Labor or the district court." *Gholston v. Smithfield Foods, Inc.*, No. 2:21-cv-194, 2022 WL 21842305, at *2 (E.D. Va. Nov. 2, 2022) (citation and quotation marks omitted). "Such approval is required for both class actions and individual cases." *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 363 (E.D. Va. 2021) (punctuation and citation omitted). A court should approve a settlement when it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Minsterman v. S.L. Nusbaum Realty Corp.*, No. 2:10-cv-303, 2011 WL 9687817, at *1 (E.D. Va. Jan. 21, 2011) (quoting *Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dep't of Labor, Emp. Standards Admin. Wage, and Hour Div.*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

"[T]here is a strong presumption in favor of finding a settlement fair." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (quotation marks and citation omitted). To determine whether a settlement agreement is fair and reasonable, courts in this district consider several factors, including:

(1)     The extent of discovery that has taken place;

(2)     The stage of the proceedings, including the complexity, expense, and likely duration of the litigation;

(3)     The absence of fraud or collusion in the settlement;

(4)     The experience of counsel who has represented the plaintiffs;

(5)     The probability of [the] plaintiffs' success on the merits; and

(6)     The amount of the settlement in relation to the potential recovery.

*Gholston*, 2022 WL 21842305, at *2 (citation omitted); *Baust*, 574 F. Supp. 3d at 363; *Davis v. BT Ams. Inc.*, No. 2:16-cv-206, 2017 WL 11506967, at *2 (E.D. Va. May 10, 2017); *Lomascolo*, 2009 WL 3094955, at *10.

### C.     Attorneys' Fees & Costs

The FLSA contains a fee-shifting provision that allows courts to award "a reasonable attorney's fee to be paid by the defendant" along with "costs of the action." 29 U.S.C. § 216(b). "[T]he FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Gholston*, 2022 WL 21842305, at *2 (quotation marks and citations omitted).

Courts typically evaluate the reasonableness of attorneys' fees by comparing the requested amount to a lodestar amount, which is a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d

5

313, 320 (4th Cir. 2008). When determining the reasonableness of the hours and rate, the Fourth Circuit has instructed district courts to consider the following 12 factors ("the *Johnson* factors"):

(1) the time and labor required in the case;

(2) the novelty and difficulty of the questions presented;

(3) the skill required to perform the necessary legal services;

(4) the attorney's opportunity costs in pressing the instant litigation;

(5) the customary fee for similar work;

(6) the contingency of a fee;

(7) the time limitations imposed by the client or circumstances;

(8) the amount in controversy and the results obtained;

(9) the experience, reputation and ability of the attorney;

(10) the undesirability of the case within the legal community in which the suit arose;

(11) the nature and length of the professional relationship between attorney and client; and

(12) attorneys' fees awards in similar cases.

*See In re Abrams & Abrams, P.A.*, 605 F.3d 238, 244 (4th Cir. 2010) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); *Barber v.*

*Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978); *Allen v. U.S.*, 606 F.2d 432, 436 n.1 (4th Cir. 1979)).

However, in common fund cases, courts in the Fourth Circuit prefer the percentage-of-the-fund or percentage-of-recovery method when determining attorneys' fees. *See Galloway v. Williams*, 2020 WL 7482191, at *5 (E.D. Va. Dec. 18, 2020) ("[T]he favored method for calculating attorneys' fees in common fund cases is the percentage[-]of[-]the[-]fund method.") (citation omitted); *Hatzey v. Divurgent, LLC*, 2018 WL 5624300, at *4 (E.D. Va. Oct. 9, 2018) (citing *Savani* v. *URS Pro. Sols. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C. 2015) ("Within this Circuit, the percentage-of-recovery approach is not only permitted[] but is the preferred approach to determine attorney's fees.")).

When determining the reasonableness of the requested fees under the percentage-of-the-fund method, district courts in this circuit have analyzed the following seven factors:

> (1) the results obtained for the collective;
>
> (2) the quality, skill, and efficiency of the attorneys involved;
>
> (3) the complexity and duration of the case;
>
> (4) the risk of nonpayment;
>
> (5) awards in similar cases;
>
> (6) objections; and
>
> (7) public policy.

*Rosales v. Rock Spring Contracting LLC*, No. 3:23-cv-407, 2024 WL 1417955, at *9 (E.D. Va. Apr. 2, 2024) (citations omitted).

Further, other district courts in this circuit have adopted a "lodestar cross-check" to assess the reasonableness of an award resulting from the percentage-of-the-fund method. *In re Zetia*, 699 F. Supp. 3d 448, 461 (E.D. Va. 2023); *see Hall v. Higher One Machines, Inc.*, 2016 WL 5416582, at *7 (E.D.N.C. 2016) (in an FLSA case, "the percentage[-]of[-]the[-]fund method, supplemented with the lodestar cross-check, is the appropriate means by which to determine an award of attorneys' fees . . . .")) (quotation marks and citation omitted). The lodestar comparison need not be as exhaustive in the context of a cross-check as it would be if it were the only method of assessing the requested attorneys' fees. *See In re Zetia*, 699 F. Supp. 3d at 462 ("When using the lodestar method only for the purpose of cross-checking the reasonableness of the percentage-of-recovery method, the court need not exhaustively scrutinize counsels' documented hours as it would if the lodestar method were used as the primary determiner of reasonableness.") (citation omitted). The cross-check nonetheless fulfills the purpose of ensuring reasonableness of attorneys' fees by comparing "(1) a calculation of attorney's fees using the percentage-of-[the-fund] method to (2) a rough or imprecise lodestar calculation." *Id.* at 461 (quotation marks and citations omitted).

### III. ANALYSIS

### A. Collective Action Certification for Settlement Purposes

The Court finds that the named plaintiffs have made a threshold showing that the potential plaintiffs are similarly situated employees. In the instant motion, the parties clearly, and collaboratively, list potential plaintiffs who will be part of the Settlement Collective. ECF No. 37 at 16. They seek certification of all individuals who were employed by Faneuil as remote, hourly CSRs on the Humana, LA Care, or Massachusetts Health Connector programs between June 5, 2020, and November 10, 2023, and who did not participate in the settlement of a lawsuit that released the claims asserted in the present litigation. ECF No. 37 at 7, 11, 16; ECF No 37-1 ¶ DD.

The named plaintiffs fall squarely within this group. *See* ECF No. 37 at 7. Moreover, the named plaintiffs have much in common with the proposed collective. For example, they share characteristics such as their job duties and their relationships with the defendant. ECF No. 16 ¶¶ 161–62. They also raise the same key issues, including "the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut down/log out time owed to each employee." ECF No. 16 ¶¶ 163. Thus, the Court finds that the named plaintiffs have made "a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law." *Purdham*, 629 F. Supp. 2d at 547 (quotation marks and citation omitted).

Additionally, the parties provided the Court with a Settlement Agreement that includes notice provisions. These provisions ensure that members of the Settlement Collective will receive notice of the terms of settlement, the relief available to the settlement collective, and the procedures for and consequences of participating in the settlement. ECF No. 37-1 at 53–56 (proposed notice). The parties also describe the fees and costs plaintiffs' counsel is seeking, which will be updated to include the Court's ruled-upon amount, then distributed to the members of the settlement collective. *Id.* at 55–56.

For these reasons, the Court will certify this matter as a collective action for settlement purposes only and approves of the parties' notice and opt-in plan. The Settlement Collective shall be defined as:

> All current and former hourly CSRs who worked for Faneuil on the Humana, LA Care, or Massachusetts Health Connector programs at any time from June 5, 2020 to November 10, 2023, and did not previously participate in the settlement of a lawsuit that released the claims asserted in the Litigation.

**B.  The Settlement Agreement Represents a Reasonable and Fair Resolution of a Bona Fide Dispute over FLSA Provisions.**

   *i.  A bona fide dispute exists as to whether the plaintiff is entitled to overtime wages.*

The parties' Settlement Agreement resolves a bona fide dispute concerning the plaintiffs' entitlement to unpaid wages, because the parties disagree about whether the plaintiffs are entitled to compensation for unpaid work at all. *See Lomascolo*, 2009 WL 3094955, at *16 ("A bona fide dispute exists when an employee makes a claim that [they are] entitled to overtime payment."). Faneuil "strongly

10

dispute[s]" that the plaintiffs did "any off-the-clock work" and "maintains" that "even if there was some minimal off-the-clock work performed, the [p]laintiffs' estimations" of the value of that work "are grossly overstated." ECF No. 37 at 12. This disagreement over whether the plaintiff is entitled to any overtime pay at all indicates a bona fide dispute over FLSA provisions.

### ii. *The relevant factors weigh in favor of finding the parties' Settlement Agreement fair and reasonable.*

Next, the Court considers whether the Settlement Agreement is a fair and reasonable resolution of the parties' dispute. The first factor—the extent of discovery that has taken place—weighs in favor of approving the settlement. No formal discovery has taken place; however, the parties undertook extensive informal discovery before reaching a settlement agreement. ECF No. 37 at 7. Specifically, Faneuil provided "all the Settlement Collective's payroll data," which enabled the plaintiffs' expert to model the plaintiffs' asserted damages. ECF No. 37 at 20–21; ECF No. 37-2 ¶¶ 21–22 (describing outcomes of the modeling). Thus, the Court finds that the parties engaged in substantial discovery. *See, e.g.*, *Hatzey*, No. 2:18-cv-191, 2018 WL 5624300, at *2 (E.D. Va. Oct. 9, 2018) (finding that "production of payroll and timekeeping data for [the] [p]laintiff and all putative [m]embers," plus a "damages analysis" constituted "substantial discovery" in the context of an FLSA settlement). The first factor favors approving the Settlement Agreement.

The second factor—the stage of the proceedings—also weighs in favor of approval. The proceedings have "advanced to a stage sufficient to permit the parties

11

and their counsel to obtain and review evidence, evaluate their case, and engage in arms-length settlement negotiations." *Rosales*, 2024 WL 1417955, at \*6; *see Lomascolo*, 2009 WL 3094955, at \*11 (stage of proceedings favored approval where these circumstances were present). The parties were afforded a fulsome opportunity to evaluate the strengths and weaknesses of the case, with the assistance of an experienced mediator. ECF No. 37 at 7, 21. Moreover, resolution at this stage will conserve litigation resources. *See Hatzey*, 2018 WL 5624300, at \*2 (second factor favored approval where "there would be significant additional expense" to the parties if the case proceeded to trial); *Brockman v. Keystone Newport News, LLC*, No. 4:15-cv-74, 2018 WL 4956514, at \*3 (E.D. Va. Oct. 12, 2018) (same). For these reasons, the stage of the proceedings favors approval.

The third factor—the absence of fraud or collusion—weighs in favor of approving the Settlement Agreement. "There is a presumption that no fraud or collusion occurred between counsel, in the absence of evidence to the contrary." *Davis*, 2017 WL 11506967, at \*4 (quotation marks and citations omitted). Neither party has presented evidence of fraud or collusion. Thus, this factor supports approving the proposed settlement.

The fourth factor—experience of plaintiffs' counsel—heavily favors approving the Settlement Agreement. Plaintiffs' counsel have each been in practice for at least 14 years. ECF No. 37 at 22. Counsel's collective experience in complex wage and hour class and collective actions suggests that they understand how to

appropriately construct a fair and reasonable settlement. ECF No. 37 at 22–23. Thus, this factor favors approving the proposed agreement.

Finally, both the probability of the plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery weigh in favor of approving the Settlement Agreement. The plaintiff is not assured of success on the merits if this matter were to proceed to trial. ECF No. 37 at 23. At trial, the plaintiffs' possible recovery would range from $0 to $1,667,329.31, including liquidated damages. ECF No. 37 at 23–24. The parties' Settlement Agreement awards the plaintiffs up to $1,000,000.000 in a common fund. ECF No. 37-1 at 47, 55. Given the uncertainty of the plaintiff's success, a settlement fund for approximately 60% of the total estimated damages is reasonable. Thus, these factors both weigh in favor of finding the Settlement Agreement fair and reasonable. *Lafleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d at 595 (a plaintiff's uncertain success weighs in favor of approving the proposed settlement).

Because of the strong presumption in favor of finding a settlement fair, and the balance of the factors, the Court finds the parties' Settlement Agreement to be a fair and reasonable resolution of a bona fide dispute over FLSA provisions. Additionally, the Court approves the $9,000 service award to be divided among the two named plaintiffs.[6] The Court finds that award is reasonable because the named plaintiffs provided value to the class and it fall within the range of awards that have been approved in this district. *See, e.g., Henderson v. Verifications Inc.*, No.

---

[6] Initial Plaintiff Christina McCune will receive $5,000.00, and Co-Plaintiff Addesha Brady will receive $4,000.00. ECF No. 37 at 17.

13

3:11-cv-514, 2013 WL 12146748, at *4 (E.D. Va. Mar. 13, 2013) (approving a $5,000 service award to named plaintiff); *Pitt v. Kmart Corp.*, No. 3:11–cv–697, 2013 WL 12183659, at *3 (E.D. Va. May 24, 2013) (approving a $5,000 service award to the class representative); *Ryals, Jr. v. HireRight Solutions, Inc.*, No. 3:09-cv-625, 2011 WL 10846113, at *1 (E.D. Va. Dec. 22, 2011) (awarding a $10,000 service award to each class representative). Here, the named plaintiffs took on a risk and have fulfilled their duties, making the requested service award appropriate.

### C. The Parties' Agreed-Upon Award for Attorney's Fees and Costs Is Fair and Reasonable.

The Settlement Agreement provides for attorneys' fees in an amount not to exceed one-third of the common fund, which equates to $333,333.33. ECF No. 37-1 at 18. Additionally, Collective Counsel seek $30,000.00 in costs for employing ILYM, Inc. as the Claims Administrator and $9,164.00 in reimbursement for litigation costs, including the plaintiffs' share of the mediation expenses. ECF No. 37 at 17; ECF No. 37-2 ¶ 52. Faneuil does not object to counsel's request for attorneys' fees or expenses. ECF No. 37 at 17. The parties' voluntary agreement is due some deference; however, the Court must ensure that the negotiated sum is fair and reasonable.

#### *i. Percentage-of-the-fund method*

Applying the percentage-of-the-fund method, the Court finds that the proposed fee award is fair and reasonable. While the Court need not tirelessly consider each factor outlined in the legal standard above, it will note those most relevant to its reasonableness finding. *See Jones v. Dominion Res. Servs., Inc.*,

14

601 F. Supp. 2d 756, 760 (S.D.W. Va. 2009); *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 438 (D. Md. 1998).

First, the results obtained for the collective represent 60% of the maximum exposure under the plaintiffs' damages model. ECF No. 37 at 23. Plaintiffs' counsel thus obtained a favorable outcome for the collective, particularly in light of the uncertainties the plaintiffs would have faced if the case had continued.[7] *See Jones*, 601 F. Supp. 2d at 761 (this factor favors approval where the size of the fund obtained is "significant"); *Brockman*, 2018 WL 4956514, at *4 (E.D. Va. Oct. 12, 2018) (suggesting that settlements totaling between 60% and 80% of potential damages are fair). The plaintiff's high degree of success weighs strongly in the parties' favor. *See McNight v. Cir. City Stores, Inc.*, 14 F. App'x 147, 149 (4th Cir. 2001) (unpublished) ("the most critical factor in calculating a reasonable fee award is the degree of success obtained").

Next, plaintiffs' counsel are experienced in FLSA collective action litigation and worked efficiently on this case, bringing it to a proposed resolution within a year of filing. ECF No. 37 at 7; *Jones*, 601 F. Supp. 2d at 761. Relatedly, cases brought under the FLSA are fact-intensive and "requir[e] significant commitments of time and personnel to litigate." *Gholston*, 2022 WL 21842305, at *6. While this matter was not overly drawn out, it did involve consideration and analysis of complex issues, as collective actions inherently require considerable coordination and management. Plaintiffs' counsel also conducted a thorough pre-investigation,

---

[7] The Court addressed some of these risks in Part III.B.ii, *supra*.

suggesting that the duration of this matter extends well beyond its formal start date. *See* ECF No. 37-3 at ¶¶ 20–21 (declaration of counsel).

Finally, the fee award here, 33.3 percent, is comparable to those earned in similar FLSA cases. *See Winnigear v. City of Norfolk*, No. 2:12-cv-560, 2014 WL 3500996, at \*6 (E.D. Va. July 14, 2014) (courts "routinely approve percentage recoveries in FLSA cases approaching [40%] of the total recovery"); *Gagliastre v. Capt. George's Seafood Restaurant, LP*, No. 2:17-cv-379, 2019 WL 2288441, at \*5 (E.D. Va. May 29, 2019) (fees awarded under the percentage-of-recovery method in settlements under $100 million "have ranged from 15% to 40%"); *Devine v. City of Hampton*, No. 4:14-cv-81, 2015 WL 10793424, at \*3 (E.D. Va. Dec. 1, 2015) (approving of an attorneys' fee award in an FLSA case totaling 33.98 percent of the settlement amount); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 505 (M.D.N.C. 2018) (holding that a 33.39 percent award is "within the range of percentages that have been approved in other cases" in the Fourth Circuit). The Court finds that the requested fee is reasonable under the percentage-of-the-fund model.

### ii. *Lodestar cross-check*

A lodestar cross-check of the request of attorneys' fees in an amount not to exceed one-third of the common fund confirms the fairness and reasonableness of the fee. Because the Court is applying the lodestar cross-check, it need not "exhaustive[ly] scrutiny[ize]" the hours documented by counsel. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Jones*, 601 F. Supp. 2d at 766

(citing *Goldberger*). Accordingly, the Court will accept the documented hours[8] provided by the Collective Counsel. *See Jones,* 601 F. Supp. 2d at 765–766. Additionally, because the lodestar analysis serves as a double-check on the reasonableness of the fee award, the Court need not discuss the twelve *Johnson* factors separately. *See In re Neustar, Inc. Securities Litigation*, No. 1:14-cv-885, 2015 WL 8484438, at *9 (E.D. Va. Dec. 8, 2015) ("Because the lodestar is employed as a 'cross-check' . . . each of the twelve [*Johnson*] factors will not be laid out and analyzed separately.") (citing *In re The Mills Corp. Securities Litigation*, 265 F.R.D. 246, 261 n.6 (E.D. Va. 2009)). The Court therefore limits its analysis to a brief discussion of Collective Counsel's lodestar calculation and the 1.95 lodestar multiplier.

Attorney Ash billed at a rate of $600.00 per hour, Attorney Frisch billed at a rate of $650.00 per hour, and Attorney Rodriguez billed at a rate of $400.00 per hour. ECF No. 37-2 at 14 n.3. In light of the relevant *Johnson* factors, such as time and labor expended, the amount in controversy and the results obtained, experience and skill of counsel, and attorneys' fees awards in similar cases, the Court finds that these rates are reasonable.[9] *See Carr v. Rest Inn, Inc.*, 2015 WL 5177600, at *4

---

[8] However, the Court will not accept undocumented hours, such as counsel's guess that "[a]t the conclusion of this case, it is reasonably anticipated that Collective Counsel will incur another $10,000 to $20,000 in fees." ECF No. 37 at 35.

[9] The Court has already addressed *Johnson* factors eight (the amount in controversy and the results obtained) and nine (the experience and skill of counsel) in assessing both the fairness and adequacy of the Settlement Agreement, alongside the percentage-of-the-fund analysis.

17

(E.D. Va. Sept. 3, 2015) (finding $500 per hour "reasonable based on [the attorney's] experience and competence, and the nature of [the] FLSA litigation").

Attorney Ash spent a total of 178.7 hours on this matter. ECF No. 37-2 at 14 n.3. Among other tasks, Attorney Ash prepared the instant motion. *Id.* at ¶ 22, 60. Attorney Frisch spent over 64 hours on this matter[10] and worked on litigation tasks such as "pre-suit investigation, post-suit investigation, drafting pleadings, informal discovery, attendance at multiple full[-]day mediations[,] and motion[s] practice." ECF No. 37-3 ¶ 20. Attorney Rodriguez spent a total of 53.5 hours on this case. ECF No. 37-4 ¶ 6. His tasks included drafting, investigation, and researching matters involving specific pleadings and motions. *Id.* ¶ 7. In total, this amounts to the Collective Counsel completing 296.37 hours of work. ECF No. 37 at 39. Upon review of all these tasks, the Court finds that all the time billed in this matter was reasonable.

The Court finds that the lodestar multiplier—1.95[11]—is further indicia of the reasonableness of the proposed fee award. Although the requested fee is more than

---

[10] At the time Attorney Frisch signed his declaration, he noted that he had "spent *over* 64 hours to date prosecuting the instant claims." ECF No. 37-3 ¶ 21 (emphasis added). It is unclear how many hours "over" 64 that Attorney Frisch could have expended. Therefore, the Court will only credit Attorney Frisch for 64 hours of work.

[11] The lodestar multiplier is the sum of the percentage-based request for attorneys' fees, $333,333.33, divided by the lodestar amount, $170,220.00. This figure is consistent with the parties' calculations.

18

the lodestar amount of $170,220.00,[12] the multiplier is already below the range that courts in this circuit have consistently held as reasonable. *See, e.g., Kruger v. Novant Health, Inc.*, No. 1:14-cv-208, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) (approving fees at "3.69 times the lodestar"); *Jones*, 601 F. Supp. 2d at 766 (S.D. W. Va. 2009) (approving a lodestar multiplier between 3.4 and 4.3 because "[c]ourts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee"); *In re Genworth Fin. Secs. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) (approving lodestar multiplier of 1.97 as "eminently reasonable," and noting that "[d]istrict courts within the Fourth Circuit have regularly approved attorneys' fees awards with 2–3 times lodestar multipliers.").

For the foregoing reasons, the Court finds that the agreed-upon attorneys' fees award—$333,333.33, or 33.3 percent of the common fund—is fair and reasonable.

## IV. CONCLUSION

For the foregoing reasons, the plaintiffs' Unopposed Motion and Incorporated Memorandum of Law for Settlement Approval (ECF No. 37) is **GRANTED.**

The parties are **ORDERED** to carry out the terms of the Settlement Agreement (ECF No. 37-1). The settlement fund in the gross amount of $1,000,000.00 is **APPROVED.** The Court further **APPROVES** $9,164.00 in

---

[12] The lodestar amount is calculated by isolating the hours worked and rates of each attorney within the Collective Counsel, multiplying those values separately, and then totaling each result, leading to a sum of $170,220.00.

reimbursement for litigation and mediation costs, attorneys' fees in an amount not to exceed one-third of the common fund, and the named plaintiffs' service award totaling $9,000.00 to be paid from the common fund.

The FLSA collective is preliminarily certified for settlement purposes only, and the Court approves the proposed method, form, and timeline for the distribution of the Settlement Notice and Claim. To become an "Authorized Claimant," members of the Settlement Collective must timely return a completed Claim Form and will be bound by the release and enjoinment provisions of the Settlement Agreement.

The Court further **FINDS** that ILYM, Inc. is qualified to act as the Claims Administrator to fulfill the claims administration duties set forth in the Settlement Agreement and the reasonable costs associated with the Claims Administrator shall be paid from the common fund.

It is **FURTHER ORDERED** that the claims and demands of the plaintiffs against Defendant Faneuil Inc. are **DISMISSED WITH PREJUDICE** except that the Court **RETAINS** jurisdiction to resolve any dispute that may arise from the parties' Settlement Agreement.

The Clerk is **DIRECTED** to send a copy of this Opinion & Order to all counsel of record.

**IT IS SO ORDERED.**

/s/
Newport News, Virginia         Jamar K. Walker
August 13, 2024                United States District Judge